1  Gerald L. McMahon, Esq. (SBN 036050)
2  Monty A. McIntyre, Esq. (SBN 95796)
   G. Scott Williams, Esq. (SBN 226516)
3  SELTZER CAPLAN McMAHON VITEK
   A Law Corporation
4  750 B Street, 2100 Symphony Towers
5  San Diego, California 92101-8177
   Telephone:   (619) 685-3003
6  Facsimile:    (619) 685-3100

```
┌─────────────────────────┐
│        FILED            │
│   ┌─────────────────┐   │
│   │  DEC 2 1 2007   │   │
│   └─────────────────┘   │
│  CLERK, U.S. DISTRICT COURT │
│ SOUTHERN DISTRICT OF CALIFORNIA │
│ BY                  DEPUTY │
└─────────────────────────┘
```

7
8  Attorneys for Defendants LOWLIFE CORPORATION LIMITED; EBTM plc; and DALE
   MASTERS

9

10              **UNITED STATES DISTRICT COURT**

11              **SOUTHERN DISTRICT OF CALIFORNIA**

12  REALLY LIKEABLE PEOPLE, INC., a          )  CASE NO. _____  '07 CV 2405 L CAB
13  Delaware corporation, LOSERKIDS, INC., a  )
14  California Corporation, MACBETH, INC., a   )  NOTICE OF REMOVAL OF CIVIL
    California corporation, MACBETH OPTICS,    )  ACTION BASED ON FEDERAL
15  LP, a California limited partnership, and   )  DIVERSITY JURISDICTION (28 U.S.C.
    REALLY LIKEABLE PEOPLE II, INC.            )  §§ 1332, 1441(B))
16  (formerly ATTICUS CLOTHING, INC.), a      )
17  California corporation,                     )
                                                )
18                      Plaintiffs,             )
                                                )
19          vs.                                 )
                                                )
20  LOWLIFE CORPORATION, LTD, an English     )
    limited company, EBTM plc, an English       )
21  corporation, DALE MASTERS, an individual,   )
22  and DOES 1 through 25, inclusive,           )
                                                )
23                      Defendants.             )
                                                )
24  _____ )

25

26  ///

27  ///

28  ///

---

NOTICE OF REMOVAL OF CIVIL ACTION BASED ON FEDERAL DIVERSITY JURISDICTION (28
U.S.C. §§ 1332, 1441(b))

TO:   THE CLERK OF THE ABOVE-ENTITLED COURT, ALL PARTIES, AND ALL
ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that LOWLIFE CORPORATION LIMITED (incorrectly sued as LOWLIFE CORPORATION, LTD); EBTM plc (incorrectly sued as EVERYTHING BUT THE MUSIC, plc); and DALE MASTERS, Defendants in the above-entitled action, hereby remove the state court action described below to this court, based upon federal diversity jurisdiction.

## I.    INTRODUCTION

1.    This case is hereby removed, from state court, where Plaintiffs filed it and it is currently pending, to federal court. This case may be removed to federal court because this court has original jurisdiction under 28 U.S.C. § 1332, and the action is one which may be removed to this court by Defendants pursuant to the provisions of 28 U.S.C. § 1441(b).

## II.    THE STATE COURT ACTION

2.    On or about November 13, 2007, Plaintiffs filed a Complaint alleging causes of action for Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Fraud, Rescission, Misappropriation of Trade Secrets, Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty, Intentional Interference with Contract, Unfair Competition, and Violation of Business & Professions Code § 17200, et seq., in the Superior Court of the State of California, County of San Diego, entitled REALLY LIKEABLE PEOPLE, INC., et al. v. LOWLIFE CORPORATION, LTD, et al., Case Number 37-2007-00081582-CU-BC-CTL.   Each Defendant was served with the Summons and Complaint sometime between December 7 and December 11, 2007. Defendants filed an Answer in said case on December 21, 2007. Copies of the Summons, Complaint, Civil Case Cover Sheet, Notice of Case Assignment, Notice of Case Reassignment, and Answer from the state court action are attached as Exhibit 1. *See* 28 U.S.C. § 1446(a).

## III.    BASES FOR JURISDICTION

3.    The state court action is a civil action over which this court has original jurisdiction under 28 U.S.C. §§ 1332 because it is a civil action between citizens of a state and

2

1 | citizens or subjects of a foreign state and the matter in controversy exceeds the sum or value of

2 | $75,000, exclusive of interest and costs. As alleged in the complaint, and upon information

3 | and belief, each Plaintiff was and continues to be a citizen of either the State of California or

4 | the State of Delaware. (Compl., ¶¶ 1-4.) Defendant EBTM plc is an English corporation,

5 | Defendant LOWLIFE CORPORATION LIMITED, is an English limited company, and Dale

6 | Masters is an Australian citizen and a resident of Great Britain. As such, there is complete

7 | diversity of citizenship between the Plaintiffs and Defendants. In addition, as alleged in the

8 | complaint, the matter in controversy exceeds $75,000. (See, e.g., Compl., ¶ 41.)

9 |       4.       The state court action is removable to this court by Defendants pursuant to the

10 | provisions of 28 U.S.C. § 1441(b) because, as explained above, no Defendant is a citizen of

11 | this state.

12 |       5.       This removal is timely under 28 U.S.C. § 1446(b) because Defendants were not

13 | served a copy of the complaint until sometime between December 7 to December 11, 2007,

14 | and this Notice of Removal is being filed within 30 days of such service. It is timely filed and

15 | otherwise satisfies the procedural requirements of 28 U.S.C. § 1446.

16 |       Therefore, Defendants remove the state court action to this court because this court has

17 | subject matter jurisdiction pursuant to 28 U.S.C. § 1332 and the action is removable pursuant

18 | to 28 U.S.C. § 1441(b). Immediately after filing this Notice of Removal, Defendants will file a

19 | copy of this Notice of Removal with the Clerk of the Court, Superior Court of California,

20 | County of San Diego in accordance with 28 U.S.C. § 1446(d).

21 |

22 | Dated: December 21, 2007                    SELTZER CAPLAN McMAHON VITEK,
                                                    A Law Corporation

23 |

24 |                                             By: _____

25 |                                             Gerald L. McMahon
                                                 Monty A. McIntyre
26 |                                             G. Scott Williams
                                                 Attorneys for Defendants LOWLIFE
27 |                                             CORPORATION LIMITED; EBTM, plc; and
                                                 DALE MASTERS
28 |

3

Exhibit 1

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

| | FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE) |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
LOWLIFE CORPORATION, LTD. an English limited company, EVERYTHING
BUT THE MUSIC, plc, an English corporation, DALE MASTERS, an individual,
and DOES 1 through 25, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* REALLY LIKEABLE PEOPLE, INC.,
a Delaware corporation, LOSERKIDS, INC., a California Corporation, MACBETH, INC., a California
corporation, MACBETH OPTICS, LP, a California limited partnership, and REALLY LIKEABLE
PEOPLE II, INC. (formerly ATTICUS CLOTHING INC.), a California corporation.

NOV 14 '07 PM 3:09

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a
copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the
court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more
information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse
nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may
lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an
attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services
program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California
Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito
en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por
escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted
pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de
California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no
puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta
su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un
servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios
legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de
California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California,
(www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | CASE NUMBER:<br>*(Número del Caso):* |
|---|---|
| Superior Court of California, County of San Diego<br>The Hall of Justice<br>330 West Broadway<br>San Diego, CA 92101 | 37-2007-00081582-CU-BC-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
J. Warren Rissier                              (SBN 197939)              (213) 680-6400
Bingham McCutchen, LLP
335 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071

| DATE:<br>*(Fecha)* | Clerk, by<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |
|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* EVERYTHINGBUT THE MUSIC, plc
    under: ☒ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
           ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. January 1, 2004)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc.
www.USCourtForms.com

1  BINGHAM McCUTCHEN LLP
   J. Warren Rissier (SBN 197939)
2  Aron P. Rofer (SBN 240021)
   355 S. Grand Avenue, 44th Floor
3  Los Angeles, CA 90071
   Telephone: (213) 680-6400
4  Facsimile: (213) 680-6499

5  Attorneys for Plaintiffs Really Likeable People, Inc.,
   Loserkids, Inc., Macbeth, Inc., Macbeth Optics, LP, and
6  Really Likeable People II, Inc. (formerly Atticus
   Clothing, Inc.)

7

FILED
CIVIL BUSINESS OFFICE 19

07 NOV 13 PM 4: 07

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF SAN DIEGO

10

11  REALLY LIKEABLE PEOPLE, INC., a          CASE NO. 37-2007-00081582-CU-BC-CTL
    Delaware corporation, LOSERKIDS, INC.,
12  a California Corporation, MACBETH,        COMPLAINT FOR:
    INC., a California corporation, MACBETH   (1) BREACH OF CONTRACT;
13  OPTICS, LP, a California limited          (2) BREACH OF IMPLIED COVENANT
    partnership, and REALLY LIKEABLE         OF GOOD FAITH AND FAIR DEALING
14  PEOPLE II, INC. (formerly ATTICUS         (3) FRAUD IN THE INDUCEMENT;
    CLOTHING INC.), a California              (4) RESCISSION;
15  corporation,                              (5) MISAPPROPRIATION OF TRADE
                                              SECRETS;
16              Plaintiffs,                   (6) BREACH OF FIDUCIARY DUTY;
                                              (7) AIDING AND ABETTING BREACH OF
17       vs.                                  FIDUCIARY DUTY;
                                              (8) INTENTIONAL INTERFERENCE
18  LOWLIFE CORPORATION, LTD, an              WITH CONTRACT;
    English limited company, EVERYTHING       (9) UNFAIR COMPETITION; AND
19  BUT THE MUSIC, plc, an English           (10) VIOLATION OF BUSINESS &
    corporation, DALE MASTERS, an            PROFESSIONS CODE § 17200, ET SEQ.
20  individual, and DOES 1 through 25,
    inclusive,                               DEMAND FOR JURY TRIAL
21
22              Defendants.

23

24       Plaintiffs Really Likeable People, Inc. ("RLP"), Loserkids, Inc. ("Loserkids"),

25  Macbeth, Inc. and Macbeth Optics, LP ("Macbeth"), and Really Likeable People II, Inc.

26  (formerly Atticus Clothing Inc.) ("Atticus Clothing") for their Complaint against Lowlife

27  Corporation, Ltd ("Lowlife"), Everything But The Music, plc ("EBTM"), Dale Masters

28  ("Masters") and Does 1 through 25 (collectively "Defendants") allege as follows:

A/72216766.5

COMPLAINT

## THE PARTIES

1.    Plaintiff RLP is and, at all times relevant hereto, was a corporation duly organized and existing under the laws of the State of Delaware with its headquarters located in Carlsbad, California in the County of San Diego.

2.    Plaintiff Loserkids is and, at all times relevant hereto, was a resident and citizen of the State of California with its headquarters located in Carlsbad, California in the County of San Diego.  Loserkids is a subsidiary of RLP.

3.    Plaintiff Macbeth is and, at all times relevant hereto, was a resident and citizen of the State of California with its headquarters located in Carlsbad, California in the County of San Diego.  Macbeth is a subsidiary of RLP.

4.    Plaintiff Atticus Clothing is and, at all times relevant hereto, was a resident and citizen of the State of California with its headquarters located in Carlsbad, California in the County of San Diego.  Atticus Clothing is a subsidiary of RLP.  Plaintiffs RLP, Loserkids, Macbeth and Atticus Clothing are hereinafter collectively referred to as "RLP" or "Plaintiffs."

5.    RLP is informed and believes and on that basis alleges that Defendant Lowlife is and, at all times relevant hereto, was a limited company organized under the laws of the United Kingdom ("UK") with its principal place of business in London, England, which has regularly transacted business in the county of San Diego and who negotiated and entered into the relevant contracts in Carlsbad, California in the County of San Diego.  Lowlife has described itself as "engaged in the business of manufacturing and distributing branded soft goods, including but not limited to casual clothing, headgear, footwear and other accessories bearing the Atticus, Macbeth, Loserkids and Lowlife brands."

6.    RLP is informed and believes and on that basis alleges that Defendant EBTM is and, at all times relevant hereto, was an English corporation with its principal place of business in the UK, and who reviewed and approved of the relevant contracts between Lowlife and RLP which provide, as detailed below, that California law applies.  RLP is informed and believes and on that basis alleges that on or about May 31, 2007, EBTM acquired Lowlife.

A/72216766.5

2

COMPLAINT

1   EBTM describes itself as an online retailer "specializing in music inspired fashion including

2   clothing, footwear, jewelry and accessories." EBTM's website, EBTM.com, advertises as doing

3   business in the United States, Europe and the UK, providing conversions for prices in the US

4   dollar, Euro and Pound, respectively.

5       7.      RLP is informed and believes and on that basis alleges that Defendant

6   Masters is and, at all times relevant hereto, was an individual who resides in the UK. RLP is

7   informed and believes and on that basis alleges that Masters was and is the managing director of

8   Lowlife. RLP is informed and believes and on that basis alleges that commencing on or about

9   June 6, 2007, Masters became a member of the Board of Directors of EBTM.

10      8.      RLP is informed and believes and on that basis alleges that Defendant

11  Masters was the sole owner of Lowlife commencing on or about May 2006 until the time that he

12  sold Lowlife to EBTM. RLP is informed and believes and on that basis alleges that, in

13  connection with the sale, Masters became the largest single shareholder of EBTM.

14      9.      RLP is informed and believes and on that basis alleges that there exists

15  and at all times herein mentioned there existed, a unity of interest and ownership between

16  Defendant Masters and Defendant Lowlife, as described above, such that any individuality and

17  separateness between Masters and Lowlife have ceased and Lowlife is the alter ego of Masters in

18  that Masters dominated Lowlife as its sole owner and managing director.

19      10.     RLP is informed and believes and on that basis alleges that adherence to

20  the fiction of a separate existence of the Defendant Lowlife as an entity distinct from Defendant

21  Masters would permit an abuse of the corporate privilege and would sanction a fraud and

22  promote injustice.

23      11.     Plaintiffs do not know the true names and capacities, whether individual,

24  corporate, associate, or otherwise, of the defendants that Plaintiff sues in this Complaint as

25  DOES 1 through 25, inclusive (collectively, the "Doe Defendants"), and, therefore, sues the Doe

26  Defendants by these fictitious names. Plaintiffs will amend this Complaint to allege the true

27  names and capacities of the Doe Defendants when Plaintiffs ascertain the true names of the Doe

28  Defendants. Plaintiffs are informed and believe, and thereon allege, that the Doe Defendants,

A/72216766.5

3

1  and each of them, are responsible in some manner for the acts and omissions that Plaintiffs allege

2  in this Complaint and that the conduct of the Doe Defendants, and each of them, proximately

3  caused Plaintiffs' damages as alleged in this Complaint.

4      12.    Plaintiffs are informed and believe and on that basis allege that all of the

5  acts set forth in this Complaint alleged to have been done by each Defendant were, where

6  applicable, authorized, approved, or ratified by each of the other Defendants. Plaintiffs are

7  informed and believe and based thereon allege that each of the Defendants is the agent, servant,

8  employee, partner, associate, joint venturer, co-participant and/or principal of the remaining

9  Defendants, and that, where applicable, each Defendant has been, at all material times, acting

10  within the scope of such relationship and with the full knowledge, consent, authority, ratification,

11  and/or permission of the remaining Defendants.

12  <h3 style="text-align:center">GENERAL ALLEGATIONS</h3>

13      13.    RLP is a locally based company which owns and licenses rights to

14  distribute youth-oriented, music-inspired clothing brands Macbeth and Loserkids and, until the

15  brand was sold to Lowlife in July 2007, Atticus. RLP markets its products, which include

16  clothing, shoes and sunglasses, to consumers with music interests.

17      14.    RLP was founded by Jon Humphrey and two members of the San Diego-

18  born band Blink-182, including current RLP owner Tom DeLonge. Blink-182 achieved huge

19  commercial success. Indeed, its album *Enema of the State* sold over 12 million copies

20  worldwide. In 2005, Blink-182 disbanded and Tom DeLonge formed a new band, Angels &

21  Airwaves. Angels & Airwaves released their debut album *We Don't Need to Whisper* in May

22  2006, where it debuted at number 4 on the Billboard 200. In November 2007, Angels &

23  Airwaves released their album *I-Empire* where it debuted at number 1 for iTunes album

24  downloads.

25      15.    Blink-182 and Angels & Airwaves have been a promotional vehicle for

26  RLP's brands. In 1999, RLP formed the Loserkids corporation and launched its website,

27  www.loserkids.com ("Loserkids.com"), with fulfillment services provided by ARTISTdirect.

28  Loserkids.com was the first of its kind youth portal where youth could find music-inspired

A/72216766.5

4

1     apparel, accessories and footwear that were otherwise hard to find in the average retail venues.

2     The Loserkids.com website features an e-tailing store where consumers can purchase clothing

3     and merchandise sold under a number of brands, including RLP's brands and other brands, such

4     as Adio, Volcom, DC and Hurley.  The websites for both Blink-182 and Angeles & Airwaves,

5     http://www.blink182.com and http://www.angelsandairwaves.com, respectively, link to

6     Loserkids.com.

7           16.    RLP evolved to promote a number of bands, who in turn helped promote

8     RLP's apparel and other consumer goods brands through appearances in catalogues, stage

9     appearances, promotional photos, and features on the Loserkids.com website.  In promoting its

10    brands, RLP historically used its personal relationships with bands to place their products with

11    the bands, and to get the musicians to appear in RLP's marketing materials and promotions.

12    Indeed, RLP has a recording studio on its premises, where its musician sponsors can create new

13    music.

14           17.    RLP businesses have been quite successful, in large part due to their

15    affiliation with Tom DeLonge and his bands, the goodwill that Loserkids and Macbeth have built

16    for their brands with individual customers, and Loserkids and Macbeth's strong relationships

17    with their suppliers, distributors and retailers, including their reputation for promptly paying

18    suppliers and timely shipping product to distributors and retailers.

19           18.    On February 25, 2003, RLP contracted with Lowlife, for Lowlife to be

20    RLP's distributor of Atticus products in the UK, through a February 25, 2003 Manufacturing

21    Agreement (the "Atticus Manufacturing Agreement").  Lowlife and Masters, the co-owner and

22    managing director of Lowlife, were new to marketing music-inspired brands.  Lowlife had

23    historically sold only belts under the Lowlife brand.

24           19.    Also on February 25, 2003, RLP contracted with Lowlife, for Lowlife to

25    be RLP's distributor of Macbeth products in the UK, through a February 25, 2003 Manufacturing

26    and Distribution Agreement (the "Macbeth Manufacturing Agreement").

27           20.    On February 21, 2006, the parties entered into Amendments No. 1,

28    amending the original terms of the Atticus and Macbeth Manufacturing Agreements to, among

5

COMPLAINT

1  other things, provide for distribution rights to a number of additional European countries

2  (including Italy, Germany, Austria, Norway, Sweden, Switzerland, Belgium, Netherlands,

3  Luxembourg, Portugal, Spain and Malta).

4        21.    In 2005, RLP and Lowlife entered into an arrangement to jointly operate a

5  website at www.loserkids.uk.com ("Loserkids.uk.com"), which was intended to be a UK version

6  of the website owned and operated by RLP at Loserkids.com in the United States. The model for

7  Loserkids.uk.com was developed by RLP in connection with the Loserkids.com site, based on

8  RLP's successful website promotion and fulfillment arrangements and other experience in

9  creating and operating Loserkids.com.

10        22.    In 2006, RLP began discussions with Masters and Lowlife about a

11  possible expanded arrangement for Masters and Lowlife to distribute RLP's brands Atticus,

12  Macbeth and Loserkids. However, RLP subsequently learned of disturbing information

13  regarding Masters' attempt to buy out the then co-owner of Lowlife and regarding Masters'

14  hidden expansion of Lowlife's belt business into apparel in violation of the Manufacturing

15  Agreements. Accordingly, RLP decided that it did not want to enter into a long term

16  arrangement with Masters, and RLP began negotiating a termination of its distributor

17  relationships with Masters and Lowlife. During these negotiations, Masters expressed interest in

18  acquiring the Atticus brand, and RLP expressed interest in possibly selling it to him.

19        23.    On May 29, 2007, RLP and Lowlife entered into the agreements at issue.

20  Pursuant to the ASSET PURCHASE AND SALE AGREEMENT (hereinafter "Atticus Asset

21  Purchase Agreement"), RLP agreed to sell Atticus brand assets to Lowlife in exchange for

22  payment of $4.2 million. The parties also entered into "wind-down" agreements, providing for

23  transition of the Atticus brand assets and accompanying obligations from RLP to Lowlife, for

24  wind-down of the distribution relationships between RLP and Lowlife created by the Atticus and

25  Macbeth Manufacturing Agreements, and for wind-down of the relationship between RLP and

26  Lowlife with respect to operation of the Loserkids.uk.com website.

27        24.    Among other things, the parties agreed that during the seven month wind-

28  down period, from May 29, 2007 through December 31, 2007, that: (1) Lowlife would assume

A/72216766.5

6

1  RLP's obligations for payment to manufacturers of Atticus product, and shipments of Atticus

2  product pursuant to purchase orders Lowlife bought under the Atticus Asset Purchase

3  Agreement; (2) Lowlife would continue operating and promoting the Loserkids.uk.com website

4  and paying royalties to RLP for sales of product on the site; and (3) Lowlife would be given a

5  license to distribute Macbeth products in the UK, Republic of Ireland, the Channel Islands, the

6  European Union, Norway, Switzerland, Turkey, and Russia (the "Territory") and would pay

7  royalties to RLP for sales of Macbeth product in the Territory.  Consistent the past practice and

8  the established course of dealing for the site, Atticus product was approved for sale on

9  Loserkids.uk.com and Lowlife acquired RLP's obligations under a purchase order that provided

10  for shipment of Fall 2007 Atticus product to be sold on Loserkids.com.  At the conclusion of the

11  wind-down period, RLP is to take over operation of the Loserkids.uk.com site and distribution of

12  Macbeth product in the Territory.

13        25.  On May 31, 2007, two days after the execution of the definitive

14  agreements to sell the Atticus brand to Lowlife, Masters disclosed for the first time that he was

15  not actually working with a "financing source" or obtaining loans or investment to underwrite a

16  portion of the purchase price, as his agent had represented during the negotiations, but instead

17  Masters had been conspiring with EBTM, a direct competitor of Loserkids in the UK, to sell the

18  Atticus brand and Lowlife to EBTM.

19        26.  On June 1, 2007, EBTM publicly announced that it had acquired Lowlife.

20  RLP is informed and believes and on that basis alleges that, in connection with EBTM's

21  acquisition of Lowlife, Masters became the largest single shareholder of EBTM's stock and

22  became a member of EBTM's board of directors, and thereby assumed fiduciary duties to

23  EBTM's stockholders.  Furthermore, RLP is informed and believes and on that basis alleges that

24  Masters entered into a "service agreement" with EBTM whereby he will receive a salary and a

25  bonus of up to more than 60% of his salary or £62,500 equivalent to approximately US

26  $126,000.  Thus, RLP is informed and believes and on that basis alleges that Masters is now

27  compensated based on performance of EBTM and heavily incentivized to do what is in the best

28

A/72216766.5

7

COMPLAINT

1  interests of EBTM and EBTM.com, rather than what is in the best interests of the Macbeth brand

2  or Loserkids.uk.com.

3        27.    RLP is informed and believes and on that basis alleges that Masters and

4  Lowlife never intended to comply with their obligations under the wind-down agreements.

5  Instead, RLP is informed and believes and on that basis alleges that Masters and Lowlife

6  improperly and fraudulently induced RLP to enter into agreements regarding sale of Atticus

7  brand assets, operation and promotion of Loserkids.uk.com and distribution and promotion for

8  Macbeth product, in order to take control of Loserkids.uk.com and Macbeth distribution in the

9  Territory so that Lowlife, Masters and their co-conspirator, EBTM, could control the success or

10  failure of RLP's businesses in the Territory and could misappropriate RLP's trade secrets and

11  other valuable intellectual property.

12        28.    RLP is informed and believes and on that basis alleges that, through the

13  aforementioned agreements, Masters and Lowlife created, and sold as a package to EBTM, a

14  virtual strangle-hold on RLP's ability to make sales, to build and preserve brand value in the

15  Territory, and to otherwise compete on an even footing in the consumer marketplace. RLP is

16  informed and believes and on that basis alleges that, Lowlife and Masters, conspiring with

17  EBTM, further tried to solidify that ill-gotten control and unfairly compete in the marketplace

18  by causing the Loserkids.uk.com site to be shut down through a fraudulent scheme built on lies

19  and false pretenses in an effort to hijack the fulfillment function for Loserkids.uk.com,

20  transferring it to EBTM.

21        29.    RLP is informed and believes and on that basis alleges that Lowlife,

22  EBTM and Masters conspired to hobble RLP as a competitor by failing to fulfill Lowlife's

23  contractual obligations to promote sales through the Loserkids.uk.com site and for Macbeth

24  products in the Territory, thereby intentionally devaluing the goodwill associated with

25  Loserkids.uk.com and Macbeth products during the period in which Lowlife and Masters (and

26  EBTM, by virtue of its ownership of Lowlife) controlled promotion of the site and brand,

27  respectively, in the Territory. RLP is informed and believes and on that basis alleges that

28  Lowlife, EBTM and Masters illegally conspired to provide EBTM a seven month head-start on a

A/72216766.5

8

COMPLAINT

1   direct competitor and, through neglect and inaction as well as affirmative wrongful acts, ensured

2   that the value of the Loserkids.uk.com website and Macbeth brands would be severely damaged

3   in the Territory by the time the wind-down agreements expired by their terms on December 31,

4   2007. RLP is informed and believes and on that basis alleges that this was all a fraudulent and

5   intentional effort by Lowlife and Masters, conspiring with EBTM, to damage RLP and the value

6   of its brands and business.

7          30.    RLP is informed and believes and on that basis alleges that, in connection

8   with this scheme, EBTM, assisted by Lowlife and Masters, stole RLP's proprietary trade secret

9   protected information, including but not limited to Loserkids.uk.com's customer lists and data so

10  that it could be used by EBTM.

11         31.    As a result of Defendants' numerous wrongful acts, described in detail

12  below, Defendants have caused millions of dollars in damages to RLP.

13                          **FIRST CAUSE OF ACTION**

14                  (Breach of Written Contracts Against Defendant Lowlife)

15         32.    Plaintiffs reallege and incorporate herein Paragraphs 1- 31 above in its

16  First Cause of Action.

17         33.    Lowlife has breached numerous provisions of the relevant agreements as

18  described below.

19  **Atticus Wind-Down Agreement**

20         34.    On or about May 29, 2007, at Carlsbad, California, Plaintiff Atticus

21  Clothing (a subsidiary of RLP) and Defendant Lowlife entered into a written agreement entitled

22  ATTICUS INVENTORY, SALES ORDER AND WIND-DOWN AGREEMENT (hereinafter

23  "Atticus Wind-Down Agreement"). The Atticus Wind-Down Agreement generally provides for

24  the wind-down of the distribution relationship between Atticus Clothing and Lowlife created by

25  the Atticus Manufacturing Agreement, and makes certain provisions in connection with sale of

26  the Atticus assets from Atticus Clothing to Lowlife. The Agreement provides that it "shall be

27  governed by and construed in accordance with the laws of the State of California, excluding its

28  conflict of laws rules." *See* §8.6

A/72216766.5

9

COMPLAINT

35.    Plaintiff Atticus Clothing has performed in all material respects all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the Atticus Wind-Down Agreement.

36.    Defendant Lowlife, however, has breached the Atticus Wind-Down Agreement as described below.

*Lowlife's Failure To Pay RLP For Fall 2007 Atticus T-shirts*

37.    Atticus t-shirts have historically been produced by Print Plus, Inc. ("Print Plus") located in Santa Ana, California. Because Lowlife was concerned it would be unable to secure credit terms from Print Plus for production of Fall 2007 Atticus t-shirts, the parties agreed that Lowlife was to submit a purchase order to RLP for the Fall 2007 t-shirts and RLP agreed, in turn, to provide a purchase order to Print Plus guaranteeing payment to Print Plus based on RLP's good credit and past business relationship with Print Plus. Print Plus was to ship directly to Lowlife and, upon shipment, RLP was to invoice Lowlife for payment which Lowlife agreed to promptly pay.

38.    The Atticus Wind-Down Agreement provides that Lowlife "agrees it will bear any and all costs related to the purchase of products under the purchase orders ..." and, in the event that Seller paid for the product and accompanying costs, that Lowlife "shall promptly reimburse Seller for any such expenditures." *See* Atticus Wind-Down Agreement § 6.3. Furthermore, Section 6.3 of the Atticus Wind-Down Agreement provides that Lowlife assumed from Atticus Clothing its obligations to pay manufacturers: "Seller hereby assigns to Buyer, and Buyer accepts from Seller, those current purchase orders for material that are attached hereto as Schedule 4." *See also id* ("Buyer agrees it will bear any and all costs related to the purchase of products under the purchase orders ....") and Schedule 4 (listing purchase orders from Print Plus as among Lowlife's obligations).

39.    Accordingly, Lowlife submitted a purchase order to RLP and RLP submitted a purchase order to Print Plus. On various ship dates between June 25 and July 11, 2007, the t-shirts were shipped from Print Plus directly to Lowlife and its distributors according

A/72216766.5

10

COMPLAINT

1    to Lowlife's instructions. On or about July 24, 2007, RLP sent an invoice to Lowlife for the

2    amount due, $234,000. Lowlife, however, has failed and refused to timely pay the amount due.

3         40.    In order to preserve its good credit rating, maintain its supplier

4    relationship with Print Plus and its positive reputation in the vendor community, and after

5    waiting as long as reasonably possible to receive payment from Lowlife such that Print Plus

6    could in turn be paid, RLP had no option but to pay Print Plus $234,000 for the t-shirts. RLP

7    paid Print Plus this amount on or about September 7, 2007. Lowlife, without disputing either

8    that it owes payment to RLP in that amount nor that Lowlife received and has presumably sold

9    the t-shirts for profit, has failed to pay the amount due despite repeated follow-up by RLP

10    requesting payment.

11         41.    As a direct and proximate result of Lowlife's breach of the agreement,

12    RLP has been damaged in the sum of $234,000, plus interest, among other damages.

13    *Lowlife's Failure to Pay Manufacturer (Jing Jin)*

14         42.    As noted above, Section 6.3 of the Atticus Wind-Down Agreement

15    provides that Lowlife assumed from Atticus Clothing (RLP's subsidiary) its obligations to pay

16    manufacturers: "Seller hereby assigns to Buyer, and Buyer accepts from Seller, those current

17    purchase orders for material that are attached hereto as Schedule 4." *See also id* ("Buyer agrees

18    it will bear any and all costs related to the purchase of products under the purchase orders ....").

19         43.    RLP is informed and believes and on that basis alleges that Lowlife, in

20    breach of the Atticus Wind-Down Agreement, refused to timely pay Jing Jin Traveling Bags

21    Manufacturing Ltd ("Jing Jin"), a manufacturer for Atticus Fall 2007 product whose orders were

22    among current orders listed on Schedule 4 of the agreement. *See id* Schedule 4.

23         44.    RLP is informed and believes and on that basis alleges that on or about

24    June 21, 2007, Jing Jin invoiced Lowlife for $14,413.63 in Atticus Fall 2007 product. On or

25    about August 10, 2007, Jing Jin communicated directly with Lowlife for payment of the invoice

26    and, on August 20, 2007, Lowlife promised Jing Jin that it would pay the invoice, as it was

27    obligated to do under Section 6.3 and Schedule 4 of the Atticus Wind-Down Agreement.

28

A/72216766.5

11

COMPLAINT

1    However, RLP is informed and believes and on that basis alleges that Lowlife has failed or

2    refused to pay despite Jing Jin's repeated requests for payment and Lowlife's promise to pay.

3          45.    As a direct and proximate result of Lowlife's breach of the Atticus Wind-

4    Down Agreement, Lowlife has damaged RLP in an amount including but not limited to harm to

5    its reputation in the manufacturer community. Indeed, on November 12, 2007, Jing Jin's counsel

6    notified Atticus Clothing (RLP's subsidiary) and Lowlife that it would commence legal

7    proceedings against Atticus Clothing, within 7 days, for collection of the amount due on the

8    invoice.

9    *Lowlife's Failure To Ship Atticus Fall 2007 Product To Loserkids In The U.S.*

10         46.    Because Atticus has been an anchor brand of Loserkids.com in the United

11   States, comprising approximately 40% or more of annual sales at the time the parties entered into

12   the Atticus Wind-Down Agreement, continuing to sell the Atticus brand on Loserkids.com,

13   through at a minimum 2007, was important to RLP and Loserkids. Accordingly, the Atticus

14   Wind-Down Agreement memorialized the parties' agreement for continued sale of Atticus

15   products on Loserkids.com and provided for $139,000 at wholesale prices (worth substantially

16   more for sale at retail) in Atticus Fall 2007 apparel and accessories to be shipped to

17   ARTISTdirect, the fulfillment provider for Loserkids.com orders in the United States. *See*

18   Atticus Wind-Down Agreement, § 2 and Schedule 2 (listing purchase orders from

19   ARTISTdirect).

20         47.    RLP viewed continuing to sell Atticus product on Loserkids.com as a

21   mutually beneficial arrangement for RLP and Lowlife, because most United States Atticus

22   customers purchased Atticus product from Loserkids.com and Lowlife did not have a ready

23   outlet to distribute those goods in the United States.

24         48.    In reliance on receiving the orders for Fall 2007 Atticus product to be sold

25   on the Loserkids.com website, RLP brought the fulfillment function for Loserkids.com in-house,

26   hired personnel, and invested in infrastructure. In addition, RLP did not implement any plans to

27   try to replace what had been its longstanding anchor brand on Loserkids.com with alternative

28

A/72216766.5

COMPLAINT

1   products, on the expectation that Atticus product would be available from Lowlife through the
2   end of 2007.

3       49.    Moreover, Lowlife's representative, Aron Zuccala, communicated with
4   RLP regarding shipment of the order and confirmed that the goods would be delivered.

5       50.    Lowlife, however, failed to ship any Atticus Fall 2007 product for sale on
6   Loserkids.com, instead notifying RLP, on August 31, 2007, that it would not ship the product
7   because, in substance, RLP is a competitor of EBTM.

8       51.    As a direct and proximate result of Lowlife's failure to ship the Atticus
9   Fall 2007 product in breach of the Atticus Wind-Down Agreement, Lowlife has damaged RLP
10  by causing lost profits and harming the goodwill value of Loserkids.com, among other damages.

11  **Loserkids.uk.com Wind-Down Agreement**

12      52.    On or about May 29, 2007, at Carlsbad, California, Plaintiff Loserkids (a
13  subsidiary of RLP) and Defendant Lowlife entered into a written agreement entitled
14  WWW.LOSERKIDS.UK.COM WIND-DOWN AGREEMENT (hereinafter, the
15  "Loserkids.uk.com Wind-Down Agreement"). The Loserkids.uk.com Wind-Down Agreement
16  generally provides for a wind-down of Loserkids and Lowlife's relationship in connection with
17  operation of the Loserkids.uk.com site. Section 10(f) of the Agreement provides that it "shall be
18  governed by and construed in accordance with the laws of the State of California, excluding its
19  conflict of laws rules."

20      53.    Plaintiff Loserkids has performed in all material respects all conditions,
21  covenants, and promises required on its part to be performed in accordance with the terms and
22  conditions of the Loserkids.uk.com Wind-Down Agreement.

23      54.    Defendant Lowlife, however, has breached numerous provisions of the
24  Loserkids.uk.com Wind-Down Agreement, as described below.

25  *Lowlife's Failure To Pay Royalties*

26      55.    Lowlife is contractually bound under Section 4(c) of the Loserkids Wind-
27  Down Agreement to give an accounting and pay Loserkids a royalty for sale of products on the
28  Loserkids.uk.com site thirty days after each months' end: "Lowlife shall provide to Loserkids an

A/72216766.5

13

COMPLAINT

1    accounting of the Site's financial activities within 30 days after each month's end, accompanied

2    by payment of any amounts payable ...."

3        56.    Lowlife has failed and refused to provide the accounting or royalty

4    payment for Loserkids.uk.com for the months of July, August, or September, which were due on

5    August 31, September 30, and October 31, 2007, respectively.

6        57.    As a direct and proximate result of Lowlife's failure to provide the royalty

7    payments as required under the Loserkids.uk.com Wind-Down Agreement, RLP has been

8    harmed in an amount to be proven at trial.

9    *Lowlife's Failure To Ship Atticus Fall 2007 Product To Loserkids In The UK*

10        58.    In the UK, Atticus was an anchor brand of the Loserkids.uk.com website,

11   representing approximately 50% of the site's sales historically and at the time the parties entered

12   into the Loserkids.uk.com Wind-Down Agreement. Accordingly, for substantially the same

13   reasons as those identified above regarding the United States Loserkids.com site, continuing to

14   sell Atticus on Loserkids.uk.com after the brand was sold to Lowlife was important to RLP and

15   Masters represented that it was also important to he and Lowlife. Accordingly, in connection

16   with entering into the Loserkids.uk.com Wind-Down Agreement, the parties agreed that the

17   Loserkids.uk.com site would be operated by Lowlife in accordance with past practice and that

18   Atticus product was expressly approved for sale on the site. *See* Loserkids.uk.com Wind-Down

19   Agreement § B ("the Parties have established a course of dealing with respect to the Site and

20   desire by this Agreement to memorialize the terms of such course of dealing ...") and 2(c)

21   ("Loserkids shall be deemed to have irrevocably consented to and approved the sale of 'Atticus'

22   branded products on the Site.").

23        59.    Furthermore, Lowlife expressly agreed to provide "general marketing and

24   promotion services for the Site,... ensuring that all relevant key words and other technical

25   specifications for the Site are provided ... for the purpose of registering Loserkids.uk.com with

26   search engines," and to use "commercially reasonable efforts to promote Loserkids.uk.com by

27   developing agreements with other related sites to cause a hyperlink to be created from such

28   sites." *Id.* § 2(e).

A/72216766.5

14

60.    In contravention of past practice and the stated intent to memorialize what had been the historic course of dealing with respect to the site, RLP is informed and believes and on that basis alleges that Lowlife did not ship or post any significant quantity of Atticus Fall 2007 product for sale on Loserkids.uk.com in the UK. Instead, Lowlife shipped Atticus Fall 2007 product to EBTM for sale on its competing website, EBTM.com.

61.    On August 31, 2007, Masters (Lowlife and EBTM's agent) disclosed to Diana Crawford and Amy Arroyo of RLP (the Chief Financial Officer and Director of Legal Affairs for RLP, respectively) for the first time that Lowlife refused to sell Atticus to Loserkids because, in substance, Loserkids was a competitor of EBTM (by virtue of Lowlife's sale to EBTM on or about May 31, 2007).

62.    As a direct and proximate result of Lowlife's intentional material breach of its obligations under the Loserkids.uk.com Wind-Down Agreement, Lowlife has damaged RLP by causing lost profits and harming the goodwill value of Loserkids.uk.com, among other damages.

*Lowlife's Removal of Loserkids "Shop Locator" Link from Atticus Clothing Site*

63.    In further breach of the Loserkids.uk.com Wind-Down Agreement, RLP is informed and believes and on that basis alleges that rather than using commercially reasonable efforts to promote Loserkids.uk.com by developing agreements with other related sites to cause a hyperlink to be created from such sites (as the Loserkids.uk.com Wind-Down Agreement expressly requires) and in contravention of past practice, Lowlife deleted a Loserkids.uk.com hyperlink from a site it operated, Atticusclothing.com, and added a hyperlink from Atticusclothing.com to EBTM.com, violating the terms of the Loserkids.uk.com Wind-Down Agreement and intentionally diverting commercial traffic that otherwise would have gone to Loserkids.uk.com.

64.    As a direct and proximate result of Lowlife's breach of the Loserkids.uk.com Wind-Down Agreement, Lowlife has damaged RLP by diverting business from Loserkids.uk.com to EBTM.com, resulting in lost profits to RLP and harm to the goodwill value of Loserkids.uk.com, among other damages.

A/72216766.5

15

*Lowlife's Cancellation Of Orders From Third Party Manufacturers*

65.     In contravention of past practice and in violation of its contractual obligations to promote Loserkids.uk.com, RLP is informed and believes and on that basis alleges that Lowlife cancelled some or all of the existing orders from third party manufacturers whose products had historically been sold on Loserkids.uk.com, failed to order products from third party manufacturers consistent with past practices, and/or failed to post product from such orders for sale on Loserkids.uk.com.  RLP is informed and believes and on that basis alleges that those same products were and are now being ordered for and sold on EBTM.com.

66.     As a direct and proximate result of Lowlife's breach of the Loserkids.uk.com Wind-Down Agreement, Lowlife has damaged RLP by causing lost profits and harming the goodwill value of Loserkids.uk.com, among other damages.

*Lowlife's Failure To Ship Macbeth Fall 2007 Product To Loserkids In The UK*

67.     In contravention of past practice and its obligations to promote the business of Loserkids.uk.com, RLP is informed and believes and on that basis alleges that Lowlife failed to timely ship and/or post Macbeth Fall 2007 product on Loserkids.uk.com, despite that those products had been directly shipped by the Macbeth third party supplier to Lowlife on or about August 1, 2007, per Lowlife's delivery instructions.  Instead, RLP is informed and believes and on that basis alleges that Lowlife failed to post Macbeth Fall 2007 product for sale on Loserkids.uk.com—despite repeated requests by RLP—until in or about the week of September 10, 2007, after most of the critical 2007 back-to-school sales season had ended.

68.     Moreover, RLP is informed and believes and on that basis alleges that even after it did belatedly post Macbeth Fall 2007 product for sale, Lowlife did so only in very limited quantities.  For example, as of September 21, 2007, the Macbeth Fall 2007 Manchester shoe was only available in two sizes—six and eleven—with nothing in between, omitting entirely the range of sizes that would account for the vast majority of sales, despite the fact that the full range of sizes had been shipped to Lowlife by RLP.

69.     Additionally, RLP is informed and believes and on that basis alleges that the full inventory of Macbeth product shipped by RLP to Lowlife still has not been delivered to the product distribution provider for Loserkids.uk.com, specifically Trinity Street Direct Limited ("Trinity Street"), as described in detail below. RLP is informed and believes and on that basis alleges that approximately 60% of the original order for Macbeth product has not yet been sent by Lowlife to Trinity Street.

70.     As a direct and proximate result of Lowlife's intentional breach of the Loserkids.uk.com Wind-Down Agreement, Lowlife has damaged RLP by causing lost profits and harming the goodwill value of the Macbeth brand and Loserkids.uk.com, among other damages.

*Lowlife's Shut Down Of Loserkids.uk.com And Fraudulent Scheme To Divert Business To EBTM*

71.     The Loserkids.uk.com Wind-Down Agreement further provides that "[c]onsistent with past practice, Trinity Street Direct Limited … will be utilized for all hosting and product distribution services for the Site." Loserkids.uk.com Wind-Down Agreement, § 2(a). Under the Agreement, any change in the host or product distribution provider could only be made with the approval of Loserkids, whose consent was not to be unreasonably withheld, conditioned or delayed: "Loserkids will not materially change such terms and conditions without the prior written consent of Lowlife, which consent shall not be unreasonably withheld, conditioned or delayed." *Id.*

72.     RLP is informed and believes and on that basis alleges that Lowlife conspired with EBTM to intentionally and fraudulently implement a scheme intended to take over fulfillment services from Trinity Street and transfer those functions to EBTM (a direct competitor of Loserkids.uk.com) in a clear breach of the Wind-Down Agreement.

73.     RLP is informed and believes and on that basis alleges that, on or about June 6, 2007 (within days of EBTM publicly announcing it had acquired Lowlife) Masters and Richard Breeden, the Chief Executive Officer of EBTM ("Breeden"), met with Andy Murray ("Murray"), the CEO of Trinity Street's parent, Trinity Universal Holdings, Ltd, and told him

A/72216766.5

17

COMPLAINT

1    that all services previously performed by Trinity Street for www.loserkids.uk.com would be run

2    by EBTM rather than Trinity Street. RLP is informed and believes and on that basis alleges that

3    Masters, Breeden and Murray further discussed logistics for transition of the business from

4    Trinity Street to EBTM, including EBTM's planned launch date of July 1, 2007, and for all stock

5    in Trinity Street's possession for the www.loserkids.uk.com store to be sent to EBTM by July

6    15, 2007. No consent to any such change was requested by Lowlife nor given by Loserkids or

7    RLP.

8            74.    RLP is informed and believes and on that basis alleges that, on or about

9    July 12, 2007, Murray, Masters and Breedan further communicated about the timing of

10   terminating Trinity Street's hosting and product distribution services and transitioning those

11   roles to EBTM and, in particular, regarding transfer of all inventory stock for

12   www.loserkids.uk.com from Trinity Street to EBTM.

13           75.    RLP is informed and believes and on that basis alleges that, on or about

14   July 30, 2007, Trinity Street sent Lowlife and EBTM, in particular Masters and Breeden, a

15   timetable to close the Loserkids.uk.com site and transfer all Loserkids.uk.com inventory from

16   Trinity Street to EBTM. The timetable provided that the Loserkids.uk.com site would close on

17   August 6, and that all inventory in stock would be transferred no later than August 20, 2007.

18           76.    On August 6, 2007, after the Loserkids.uk.com website had been shut

19   down, Masters emailed Loserkids and RLP (in particular, Diana Crawford, RLP's Chief

20   Financial Officer) and feigned an emergency, falsely implying the site was shut down at the

21   initiative of Trinity Street without prior notice to Lowlife: "Trinity Street has ceased operating

22   Loserkids UK as at 12 Noon today. The reason we have been given for this action is that they

23   'urgently required the warehouse space.' … We have tried unsuccessfully to extend today's

24   deadline. … [W]e need to agree very quickly what to do with this site. …" RLP is informed and

25   believes and on that basis alleges that Masters' statements, including that Trinity Street shut

26   down the site on their initiative without notice are fraudulent, false and untrue, fabricated by

27   Masters with the intent to defraud RLP and Loserkids and part of a broader scheme to

28

A/72216766.5                            18

1    improperly damage the value and viability of the Loserkids.uk.com site and divert

2    Loserkids.uk.com's business to EBTM.com.

3          77.    On August 8, 2007, Masters emailed Loserkids and RLP (in particular,

4    Ms. Crawford) and attempted to use this feigned emergency to get RLP to agree to switch from

5    Trinity Street to EBTM, falsely implying that there had not previously been any plan by Lowlife

6    and Masters to switch fulfillment to EBTM: "[W]e can proceed with finding an alternative to

7    Trinity St with the obvious option being a site powered by EBTM which we could go live with at

8    haste ... [a]s your Joint Venture partner we are attempting to find a solution together."

9          78.    On or about August 8, 2007, however, when RLP asked Masters for

10   correspondence from Trinity Street about why they shut down the Loserkids.uk.com site,

11   Masters responded by stating in an email to RLP that he had spoken to Trinity Street and they

12   agreed to "reinstate" the site: "I have personally spoken to Trinity St today and they will

13   reinstate the site asap—probably today."

14         79.    Thus, RLP is informed and believes and on that basis alleges that Masters

15   and Lowlife, in breach of the Loserkids.uk.com Wind-Down Agreement and as part of a broader

16   conspiracy with EBTM to steal customers and traffic from the Loserkids.uk.com site, shut down

17   the Loserkids.uk.com website and attempted to hijack the hosting and product fulfillment

18   functions for the benefit of a direct competitor, EBTM.

19         80.    Additionally, RLP is informed and believes and on that basis alleges that

20   in furtherance of their fraudulent attempt to divert Loserkids.uk.com's business to EBTM and

21   based upon his plan to do so, Masters and Lowlife, conspiring with EBTM, breached the

22   Agreement by consistently and repeatedly failing to operate the site consistent with past practice,

23   including failing to timely post Atticus or Macbeth product for sale, and failing to market or

24   promote the site in accordance with the Loserkids.uk.com Wind-Down Agreement.

25         81.    As a direct and proximate result of Lowlife's breach of the

26   Loserkids.uk.com Wind-Down Agreement, Lowlife has damaged RLP by causing lost profits

27   and harming the goodwill value of Loserkids.uk.com, among other damages.

28

A/72216766.5

19

COMPLAINT

1    <u>Macbeth Wind-Down Agreement</u>

2          82.    On or about May 29, 2007, at Carlsbad, California, Plaintiff Macbeth (a

3    subsidiary of RLP) and Defendant Lowlife entered into a written agreement entitled

4    EXTENSION DISTRIBUTION AND OPERATING AGREEMENT (hereinafter "Macbeth

5    Wind-Down Agreement"). The Macbeth Wind-Down Agreement generally provides for wind-

6    down of the distributor relationship between Macbeth and Lowlife. Section 27 of the Agreement

7    provides that the agreement "shall be interpreted and enforced according to the laws of the State

8    of California and as if drafted by both parties hereto. Licensor and Licensee irrevocably submit

9    to the jurisdiction of the state and/or federal courts in San Diego County, California for any

10    action or proceeding regarding this Agreement."

11          83.    Plaintiff Macbeth has performed in all material respects all conditions,

12    covenants, and promises required on its part to be performed in accordance with the terms and

13    conditions of the Macbeth Wind-Down Agreement.

14          84.    Defendant Lowlife, however, has breached numerous provisions of the

15    Macbeth Wind-Down Agreement as described below.

16    *Lowlife's Failure To Pay Royalties*

17          85.    Lowlife is contractually bound under Section 8 and Schedule 4 of the

18    Macbeth Wind-Down Agreement to provide Macbeth a certified royalty statement, and pay

19    Macbeth a royalty for Lowlife's sales of Macbeth product: "The Licensee must pay the Licensor

20    in accordance with Schedule 4 of this Agreement." Furthermore, Schedule 4 provides that

21    payment for the third quarter 2007 is due no later than October 15, 2007: "The Licensee shall

22    pay the Licensor said Royalty Payment for all Macbeth Products, including but not limited to

23    Optics, quarterly, as follows: ... Q307 by no later than October 15, 2007." *See also id*

24    (Providing that, by the same date, Lowlife was to provide the certified royalty statement: "On

25    each of the dates identified ... the Licensee will provide the Licensor with a royalty statement,

26    certified to be accurate by an authorized officer of the Licensee, and which specifies the value of

27    Gross Sales of Products for the preceding quarter.").

28

86.    Lowlife has failed and refused to provide the certified royalty statement or royalty payment for sale of Macbeth product for the third quarter of 2007, which was due on no later than October 15, 2007.

87.    As a direct and proximate result of Lowlife's failure to provide the royalty payments as required under the Macbeth Wind-Down Agreement, RLP has been harmed in an amount to be proven at trial.

*Lowlife's Failure To Timely Ship Macbeth Fall 2007 Orders To Distributors In The Territory*

88.    Timely shipment of Macbeth product and Macbeth's reputation for timely and reliable shipment has been a key factor in the success of the Macbeth brand. Timely delivery is particularly important in the Fall, where there is a relatively short time period for critical back-to-school sales to the teen and youth demographic which accounts for a significant portion of Macbeth sales.

89.    Accordingly, the Macbeth Wind-Down Agreement requires Lowlife to "use all reasonable endeavours to fulfil Purchase Orders with all reasonable dispatch." Macbeth Wind-Down Agreement § 7.7.

90.    RLP is informed and believes and on that basis alleges that Defendants Lowlife and Masters, however, failed to timely ship Macbeth product and they still have not shipped all Macbeth product subject to all outstanding Purchase Orders.

91.    Despite repeated inquiries and requests for information regarding proof of shipment of Macbeth product, Lowlife has failed or refused to provide the necessary information.

92.    As a direct and proximate result of Lowlife's breach of the Macbeth Wind-Down Agreement, RLP has been harmed in numerous ways, including the following: (a) lost profits based on Macbeth products not being timely delivered and in stores for much or all of the critical back-to-school shopping season; (b) loss of goodwill with consumers based on stores only offering "stale" product or spotty product line coverage during the critical back-to-school purchasing period; (c) substantial unsold-at-retail Macbeth Fall 2007 product, which will have to be repurchased by Macbeth upon expiration of the Macbeth Wind-Down Agreement so it

A/72216766.5

21

COMPLAINT

1    is not "dumped" by Lowlife at severely discounted prices to discount retailers, causing even

2    greater harm to the goodwill value and consumer cachet of the brand; (d) additional lost profits

3    based on Macbeth sales representatives losing potential sales orders for Spring 2008 or beyond,

4    because retail accounts would not place orders for new product for Spring 2008 and beyond

5    when they still had not received Fall 2007 product; and (e) loss of goodwill with retail accounts

6    based on failure to reliably deliver Macbeth product by agreed upon dates, including retailers

7    who will stop carrying or significantly reduce order volume for Macbeth products or will start

8    carrying other competing product lines because they were left with empty shelves in Fall 2007

9    and don't want to risk that happening again.

10   *Lowlife's Failure To Timely Post Fall 2007 Macbeth Product On Loserkids.uk.com*

11          93.      As described above, Lowlife failed to timely ship and/or post Macbeth

12   Fall 2007 product on Loserkids.uk.com, despite that those goods had been delivered by the

13   manufacturer directly to Lowlife on or about August 1, 2007, per Lowlife's delivery instructions.

14   Instead, Lowlife first posted Macbeth Fall 2007 product for sale on Loserkids.uk.com, after

15   repeated requests by RLP, in or about the week of September 10, 2007, after much of the critical

16   back-to-school sales period had already ended.

17          94.      Moreover, even after it did belatedly post Macbeth Fall 2007 product for

18   sale, RLP is informed and believes and on that basis alleges that Lowlife did so only in very

19   limited quantities.  For example, as of September 21, 2007, the Macbeth Fall 2007 Manchester

20   shoe was only available in two sizes—six and eleven—with nothing in between, omitting

21   entirely the range of sizes that would account for the vast majority of sales, despite the fact that

22   the full range of sizes had been shipped to Lowlife by RLP.

23          95.      As a direct and proximate result of Lowlife's breach of the Macbeth

24   Wind-Down Agreement, Lowlife has damaged RLP by causing lost profits and harming the

25   goodwill of the Macbeth brand, among other damages.

26   *Lowlife's Failure To Market The Macbeth Brand In The Territory*

27          96.      The Macbeth Wind-Down Agreement requires Lowlife to use its "best

28   endeavours" "to promote and develop the market" for Macbeth products and to market the

COMPLAINT

1   products by allocating four percent of gross sales towards marketing and promotion of Macbeth

2   products in the Territory:

3          6.1    The Licensee must use its best endeavours in the Territory;

4              6.1.1   to promote and develop the market for Products;

5              6.1.2   to market the Products in accordance with Clause 6.2;

6          6.2    The Licensee will allocate four percent (4%) of Gross Sales

7          towards marketing and promotion of the Products in the Territory.

8   Macbeth Wind-Down Agreement §§ 6.1-6.2.

9         97.    RLP is informed and believes and on that basis alleges that Lowlife,

10   however, has done little or nothing to market the Macbeth brand and instead, as described above,

11   has taken actions (or omitted performing its obligations) in order to damage Macbeth and its

12   goodwill with retail accounts and retail consumers.

13         98.    For example, Lowlife received samples for Macbeth Holiday 2007

14   product, but RLP is informed and believes and on that basis alleges that Lowlife did not show the

15   line for sale to retail accounts, in violation of its obligations under the Macbeth Wind-Down

16   Agreement to promote and sell the brand.

17         99.    Furthermore, RLP is informed and believes and on that basis alleges that

18   Lowlife has not spent four percent of gross sales toward marketing and promotion of Macbeth

19   products in the Territory.

20         100.    As a direct and proximate result of Lowlife's breach of the Macbeth

21   Wind-Down Agreement, Lowlife has damaged RLP by causing lost profits and harming the

22   goodwill of the Macbeth brand, among other damages.

23   *Lowlife's Failure To Timely Pay Manufacturer (Sito)*

24         101.    The Macbeth Wind-Down Agreement provides that Lowlife is responsible

25   for payment for any products and related costs to product suppliers. *See* Macbeth Wind-Down

26   Agreement § 8.2 ("The Licensee shall be responsible for payment for any Products and related

27   costs it has submitted Purchase Orders for ... If Licensor incurs any costs to third party

28   suppliers ... on behalf of Licensee, Licensee shall make payment to Licensor in accordance with

A/72216766.5

23

COMPLAINT

1    Schedule 4"). *See also id* at Schedule 4 (requiring Lowlife to reimburse Macbeth within 15

2    days). As a small company, it is difficult for Macbeth to find quality suppliers to produce

3    relatively small quantities of product. Macbeth has worked very hard to develop its relationship

4    with its manufacturers, and the loss of such a relationship, or a supplier being forced out of

5    business because its customers do not timely make a requested payment, would be devastating

6    for Macbeth. Having a background in sourcing and production and based on his work as a

7    distributor for Macbeth, Defendants Masters and Lowlife understood how losing a supplier

8    would damage Macbeth.

9          102.   RLP is informed and believes and on that basis alleges that Lowlife,

10    however, refused to timely pay Sito Co., LTD ("Sito"), a product supplier for Macbeth Fall 2007

11    product. Sito requested payment of approximately $117,000 from Lowlife in or about late May

12    2007. Lowlife, however, failed or refused to pay despite many promises to do so.

13          103.   In order to avoid a quality supplier possibly ceasing business due to

14    economic hardship and to prevent further damage to Macbeth's relationship with its

15    manufacturing sources, on June 1, 2007, Macbeth advanced payment of the full $117,000

16    amount of Lowlife's manufacturing costs to Sito. Despite repeated requests by Sito and Macbeth

17    to Lowlife for payment of the invoice, Lowlife failed or refused to pay, until August 13, 2007,

18    over two months after the payment was requested.

19          104.   As a direct and proximate result of Lowlife's breach of the Macbeth

20    Wind-Down Agreement, Lowlife has damaged RLP in an amount including but not limited to

21    interest on the advance.

22    ***Lowlife's "Dumping" Of Macbeth Product***

23          105.   Section 9 of the Macbeth Wind-Down Agreement prohibits Lowlife from

24    selling Macbeth Summer 2007 and Fall 2007 products "[o]ff-Price," defined as sales of such

25    products at a price which is greater than 25% below the wholesale price, without the approval of

26    Macbeth: "Licensee must obtain the approval of the Licensor to sell Products from the Summer

27    and Fall 2007 seasons (or thereafter) 'Off-Price,' which for purposes of this Agreement shall be

28

A/72216766.5

24

COMPLAINT

1  defined [as] sales of such Products at a price which is greater than 25% below the wholesale

2  price."

3          106.    Prohibiting "dumping" or selling of product "off-price" is critically

4  important for a brand like Macbeth because sale of its product at a deep discount and having its

5  wares sold through discount or off-price retailers can ruin the goodwill of the brand, because part

6  of the appeal of the product is the limited availability and "cool factor" associated with a

7  boutique, niche brand and its promotion by and association with musicians and bands.  As a

8  result, when prospective customers see the products sold at a discount, it impacts their

9  willingness to pay full price for the goods, and impacts their views as to whether the brand

10  remains cool or desirable (after all, if the products are being dumped at a discount, the

11  assumption is the must not have been desirable to other customers because they were "out of

12  style").

13          107.    RLP is informed and believes and on that basis alleges that Lowlife,

14  however, has sold Macbeth product "Off-Price" in breach of the Macbeth Wind-Down

15  Agreement.  Furthermore, RLP is informed and believes and on that basis alleges that Lowlife

16  has sold current Macbeth product offerings, including one of its best selling styles, to undesirable

17  discount retailers.

18          108.    As a direct and proximate result of Lowlife's numerous breaches of the

19  Macbeth Wind-Down Agreement, Lowlife has damaged RLP by causing lost profits and

20  harming the goodwill value of Loserkids.uk.com, among other damages.

21                          **SECOND CAUSE OF ACTION**

22      (Breach of the Implied Covenant of Good Faith and Fair Dealing against Defendant Lowlife)

23          109.    Plaintiffs reallege and incorporate herein Paragraphs 1 - 108 above in its

24  Second Cause of Action.

25          110.    The Atticus Wind-Down Agreement, Loserkids.uk.com Wind-Down

26  Agreement, and Macbeth Wind-Down Agreement entered into between RLP and Lowlife

27  imposed upon each party an implied covenant of good faith and fair dealing requiring that

28

1    neither party do anything that would injure the rights of the other to receive the benefits of the

2    Agreements.

3        111.    RLP is informed and believes and on that basis alleges that that by reason

4    of the conduct described herein and other past and present conduct, Lowlife has intentionally and

5    repeatedly breached the implied covenant of good faith and fair dealing and prevented RLP and

6    its affiliates from achieving the purpose and benefits of the Agreements.

7        112.    As a direct and proximate result of Lowlife's actions, RLP has been

8    damaged in an amount to be proven at trial.

9                              **THIRD CAUSE OF ACTION**

10                    (Fraud In The Inducement Against Lowlife and Masters)

11       113.    Plaintiffs reallege and incorporate herein Paragraphs 1 - 112 above in its

12   Third Cause of Action.

13       114.    As noted above, on or about May 29, 2007, at Carlsbad, California,

14   Plaintiffs RLP and Atticus Clothing entered into a written agreement with Defendant Lowlife

15   entitled Atticus Asset Purchase Agreement. Section 9.9 of the Atticus Asset Purchase

16   Agreement provides that: "This Agreement shall be governed by and construed in accordance

17   with the internal laws of the State of California without regard to its conflicts or choice of law

18   principles."

19       115.    On or about May 29, 2007, at Carlsbad, California, Plaintiffs RLP, Atticus

20   Clothing and/or their affiliated companies concurrently entered into the Loserkids.uk.com Wind-

21   Down Agreement, Atticus Wind-Down Agreement and Macbeth Wind-Down Agreement

22   described above (collectively the "Wind-Down Agreements"). Without the concurrent execution

23   of the Wind-Down Agreements, RLP and Atticus Clothing would not have entered into the

24   Atticus Asset Purchase Agreement.

25       116.    On or about May 14, 2007, during a meeting at the offices of Seltzer,

26   Caplan, McMahon Vitek in San Diego, California, Defendant Lowlife represented, through its

27   agent Michael Riney and others, to RLP, through Ms. Crawford, Ms. Arroyo, Mr. Humphrey and

28

A/72216766.5                              26

                                    COMPLAINT

1  others that Lowlife was working with a "financing source" in connection with Lowlife's

2  purchase of the Atticus assets described under the Atticus Asset Purchase Agreement.

3    117.  Further, on or about May 29, 2007, at Carlsbad, California, Defendant

4  Lowlife (specifically, Dale Masters) represented to RLP, Atticus Clothing and/or their affiliated

5  companies (specifically Jon Humphrey) that Lowlife would fulfill its obligations under the terms

6  of the Wind-Down Agreements.

7    118.  The representations made by Lowlife and Masters were in fact false. The

8  true facts were that Lowlife was not working with a "financing source" or obtaining loans or

9  investment to underwrite a portion of the purchase price for Lowlife's purchase of the Atticus

10  assets described under the Atticus Asset Purchase Agreement, but instead Masters had been

11  conspiring with EBTM, a direct competitor of Loserkids in the UK, to sell the Atticus brand and

12  Lowlife to EBTM.

13    119.  Further, RLP is informed and believes and on that basis alleges that

14  Lowlife had no intention of fulfilling its obligations under the terms of the accompanying Wind-

15  Down Agreements at the time it entered into the agreements because Lowlife was already

16  secretly in negotiations and/or under agreement to be sold to EBTM, a direct competitor to RLP

17  and Loserkids. Indeed, RLP is informed and believes and on that basis alleges that Lowlife has

18  repeatedly breached the agreements in a consistent effort to harm RLP and its brands and divert

19  business to EBTM.

20    120.  For example, Lowlife represented under the Atticus Wind Down

21  Agreement and the Loserkids.uk.com Wind-Down Agreement that it would continue to ship

22  Atticus product for sale on Loserkids websites, in the United States and UK, for Atticus Fall

23  2007 and thereafter. However, these representations made by Lowlife were in fact false. The

24  true facts were that, because Lowlife was to sell itself, including the Atticus brand, to EBTM—a

25  direct competitor of Loserkids—that Lowlife would not ship any significant amount of Atticus

26  Fall 2007 product for sale on Loserkids sites in either the United States or UK. Indeed, on

27  August 31, 2007, during a telephone conversation at Carlsbad, California, Lowlife (specifically

28  its agent Masters), disclosed for the first time to RLP (specifically Ms. Crawford and Ms.

A/72216766.5

27

COMPLAINT

1    Arroyo), that Lowlife would not ship Atticus product for sale on Loserkids.com, despite the

2    Agreement, because, in substance, he and the EBTM board did not want to supply Atticus to a

3    competitor.

4           121.    As a further example, Lowlife represented under the Loserkids.uk.com

5    Wind-Down Agreement that it would provide "general marketing and promotion services for the

6    Site, ... ensuring that all relevant key words and other technical specifications for the Site are

7    provided ... for the purpose of registering Loserkids.uk.com with search engines," and to use

8    "commercially reasonable efforts to promote Loserkids.uk.com by developing agreements with

9    other related sites to cause a hyperlink to be created from such sites.". *See* §2(e)  However, these

10    representations made by Lowlife were in fact false.  The true facts were that, because Lowlife

11    was to sell itself, including the Atticus brand, to EBTM—a direct competitor of Loserkids—that

12    Lowlife intended to divert business from Loserkids.uk.com to EBTM.com including developing

13    links to EBTM.com rather than Loserkids.uk.com. Indeed, the hyperlink on the

14    Atticusclothing.com website, operated by Lowlife, under the tab "SHOP" links to EBTM.com,

15    rather than Loserkids.uk.com, for purchases of Atticus clothing.

16           122.    As a further example, Lowlife represented in the Loserkids.uk.com Wind-

17    Down Agreement that "[c]onsistent with past practice, Trinity Street Direct Limited ... will be

18    utilized for all hosting and product distribution services for the Site" with a change made only

19    with the approval of Loserkids.  However, these representations made by Lowlife were in fact

20    false.  The true facts were that Lowlife intended to move hosting and product distribution

21    services for the Loserkids.uk.com site from Trinity Street to EBTM.  Indeed, as described above,

22    Lowlife and EBTM's agent, Masters, and EBTM's President Mr. Breeden, secretly visited

23    Trinity Street within days of executing the Lowerkids.uk.com Wind-Down Agreement and

24    informed Trinity Street's agent, Mr. Murray, that EBTM recently purchased Atticus and the

25    Loserkids.uk.com store, and that all services previously performed by Trinity Street for

26    Loserkids.uk.com would be run by EBTM rather than Trinity Street.

27           123.    When Lowlife made the representation that it was working with a

28    "financier" and that it would fulfill the terms of the Wind-Down Agreements, Lowlife knew the

A/72216766.5

28

COMPLAINT

1    representations to be false because it was in negotiations with or had already agreed to sell itself

2    to EBTM—a direct competitor of RLP.  Furthermore, Lowlife made these representations with

3    the intention of deceiving and defrauding RLP and to induce RLP to act in reliance on these

4    representations in the manner hereafter alleged, or with the expectation that they would so act.

5         124.    At the time the representations were made by Lowlife and Masters, and at

6    the time RLP entered into the Atticus Asset Purchase Agreement and accompanying Wind-Down

7    Agreements, RLP did not believe that the representations were false, but believed them to be true

8    and reasonably relied upon them.  RLP reasonably relied upon Lowlife's and Masters'

9    representation that they were working with a "financing source" and not a direct competitor,

10    such as EBTM, because otherwise there would be an inherent conflict in Lowlife's ability to

11    perform under the Wind-Down Agreements.  Moreover, RLP reasonably relied upon Lowlife's

12    and Masters' representation that they would fulfill their obligations under the Wind-Down

13    Agreements.  Had RLP known the true facts, it would not have entered into the Atticus Asset

14    Purchase Agreement or the accompanying Wind-Down Agreements.

15         125.    As a proximate result of the fraudulent conduct of the defendant(s) as

16    herein alleged, RLP was damaged in that it was induced to and did (a) pay over $230,000 in

17    invoices for Atticus product shipped to Lowlife for which RLP has not been repaid by Lowlife;

18    (b) expend considerable effort and monies to bring fulfillment for the United States

19    Loserkids.com website in-house in reliance on Lowlife timely delivering Fall 2007 Atticus

20    products that could be sold for the fall back-to-school season on Loserkids.com; (c) rely on

21    Lowlife to operate Loserkids.uk.com consistent with past practice and to promote the site; and

22    (d) rely on Lowlife to sell, promote and timely distribute its Macbeth products in the Territory.

23         126.    RLP is informed and believes and on that basis alleges that Masters and

24    Lowlife never intended to comply with their obligations under the Wind-Down Agreements.

25    Instead, RLP is informed and believes and on that basis alleges that Masters and Lowlife

26    improperly and fraudulently induced RLP to enter into the Atticus Asset Purchase Agreement

27    and accompanying Wind-Down Agreements, in order to control Loserkids.uk.com and Macbeth

28    distribution in the Territory so that Lowlife, Masters and their co-conspirator, EBTM, could

A/72216766.5

29

COMPLAINT

1  control the success or failure of RLP's businesses in the Territory and could misappropriate

2  RLP's trade secrets, as such misappropriation is alleged in detail below.

3       127.    RLP is informed and believes and on that basis alleges that, through the

4  Wind-Down Agreements, Masters and Lowlife created, and sold as a package to EBTM, a

5  virtual strangle-hold on RLP's ability to make sales, to build and preserve brand value in the

6  Territory, and to otherwise compete on an even footing in the consumer marketplace. RLP is

7  informed and believes and on that basis alleges that, Lowlife and Masters, conspiring with

8  EBTM, further tried to solidify that ill-gotten control and unfairly compete in the marketplace

9  by causing the Loserkids.uk.com site to be shut down through a fraudulent scheme built on lies

10  and false pretenses in an effort to hijack the fulfillment function for Loserkids.uk.com,

11  transferring it to EBTM.

12       128.    RLP is informed and believes and on that basis alleges that Lowlife,

13  EBTM and Masters conspired to hobble RLP as a competitor by failing to fulfill Lowlife's

14  contractual obligations to promote sales through the Loserkids.uk.com site and for Macbeth

15  products in the Territory, thereby intentionally devaluing the goodwill associated with

16  Loserkids.uk.com and Macbeth products during the period in which Lowlife and Masters (and

17  EBTM, by virtue of its ownership of Lowlife) controlled promotion of the site and brand,

18  respectively, in the Territory. RLP is informed and believes and on that basis alleges that

19  Lowlife, EBTM and Masters illegally conspired to provide EBTM a seven month head-start on a

20  direct competitor and, through neglect and inaction as well as affirmative actions, ensured that

21  the value of the Loserkids.uk.com website and Macbeth brands would be severely damaged in

22  the Territory by the time the wind-down agreements expired by their terms on December 31,

23  2007. RLP is informed and believes and on that basis alleges that this was all a fraudulent and

24  intentional effort by Lowlife and Masters, conspiring with EBTM, to damage RLP and the value

25  of its brands and business.

26       129.    The aforementioned conduct of Lowlife and Masters was fraudulent in

27  that they made intentional misrepresentations, deceived, and concealed material facts known to

28  Lowlife and Masters with the intention to deprive RLP of property or legal rights or otherwise

A/72216766.5

30

COMPLAINT

1  causing injury, and was despicable conduct that subjected RLP to a cruel and unjust hardship in

2  conscious disregard of RLP's rights, so as to justify an award of exemplary and punitive

3  damages.

## FOURTH CAUSE OF ACTION

### (Rescission Against Lowlife)

6    130.    Plaintiffs reallege and incorporate herein Paragraphs 1 - 129 above in its

7  Fourth Cause of Action.

8    131.    As alleged herein in Paragraphs 113 - 129 above, Lowlife fraudulently

9  induced RLP to enter into the Atticus Asset Purchase Agreement. Accordingly, RLP is entitled,

10  at its election, to rescission of the Atticus Asset Purchase Agreement, and return to RLP of the

11  consideration furnished under the terms of the Atticus Asset Purchase Agreement, plus damages

12  for harm caused to the Atticus brand from Defendants' failure to reasonably promote the brand

13  including but not limited to failure to offer its Fall 2007 line for sale on Loserkids.com or

14  Loserkids.uk.com.

## FIFTH CAUSE OF ACTION

### (Misappropriation Of Trade Secrets Against All Defendants (Civil Code § 3426, *et seq.*))

17    132.    Plaintiffs reallege and incorporate herein Paragraphs 1 - 131 above in its

18  Fifth Cause of Action.

19    133.    RLP possesses trade secrets, including customer lists and data, that derive

20  economic value from not being known to the public and are the subject of efforts that are

21  reasonable under the circumstances to maintain their secrecy.

22    134.    Section 9 of the Loserkids.uk.com Wind-Down Agreement grants Lowlife

23  the non-exclusive right to use customer data and other trade secrets solely in connection with

24  operation of Loserkids.uk.com, and makes clear that all Loserkids content (and all "intellectual

25  property rights of any kind (whether registered, unregistered, statutory, common law, and in all

26  jurisdictions throughout the universe) . . . arising out of or in connection with the use of such

27  Loserkids Content and/or the operation of the Site . . .") is and "shall remain the sole and

28  exclusive property of Loserkids." Moreover, the Loserkids.uk.com website assured those who

A/72216766.5

31

1  signed up for the Loserkids mailing list that the information would not be given to third parties:

2  "Your details will be stored and used responsibly and in accordance with our privacy policy and

3  we will not pass on details to other third parties." *See*

4  http://www.loserkids.uk.com/pages/loserlist.asp.

5      135.   RLP is informed and believes and based and on that basis alleges that

6  Defendants accessed and misappropriated RLP's trade secrets including its customer lists and

7  data when they were under a duty not to do so.

8      136.   RLP is informed and believes and on that basis alleges that EBTM

9  acquired said trade secrets through improper means and knew or had reason to know that the

10  trade secrets were acquired by improper means or acquired or disclosed where there was a duty

11  to maintain their secrecy or limit their use.

12      137.   For example, RLP is informed and believes and on that basis alleges that

13  Lowlife and EBTM falsely informed Trinity Street that EBTM owned the Loserkids.uk.com site

14  and Lowlife delivered Loserkids.uk.com's customer lists and data to EBTM, in violation of

15  privacy laws, the express privacy statements on the website, and despite the fact that the data,

16  which clearly arose out of the operation of the Site, did not belong to Lowlife and by being

17  shared with EBTM certainly was not being used for a legitimate purpose relating to operating the

18  Loserkids.uk.com site.

19      138.   RLP is informed and believes and on that basis alleges that EBTM

20  conspired with Lowlife to misappropriate RLP's trade secrets. RLP is informed and believes and

21  on that basis alleges that EBTM was and is motivated by a desire to expand its customer base by

22  stealing RLP's trade secrets and customer lists and data. Indeed, EBTM has told its investors

23  that it is "succeeding in reaching a growing and loyal customer base primarily between the ages

24  of 16 and 30 years."

25      139.   Loserkids.com, RLP's oldest brand, has the opportunity to reap the

26  rewards of the public or private capital markets which can offer attractive valuations to

27  ecommerce companies. Such valuations are based on a variety of factors including sales figures,

28  profitability, website traffic and site features. RLP's intent, as shared with Masters during its

1  relationship with him, has always been to benefit from Loserkids.com's unique market niche to

2  capitalize on such an opportunity.  In July 2005, RLP launched its first region specific website in

3  Loserkids.uk.com to expand Loserkids' global reach.  EBTM is a highly similar business model,

4  which coincidentally started trading in July 2005.  In June 2007, EBTM successfully raised

5  £5.25 million in the UK public markets, despite its April 2007 fiscal year end net operating loss

6  of £684,000.  By comparison, Loserkids.uk.com, until this year, had recognized sales growth

7  each and every month, while remaining profitable throughout.  However, Defendants' actions,

8  including but not limited to their misappropriation of Loserkids' trade secrets, has significantly

9  damaged, by millions of dollars, the brand's financial valuation in both the UK and the US.

10          140.   Moreover, by reason of Defendants' acts alleged herein, RLP has and will

11  suffer damage to its business, including but not limited to lower valuation and the loss of sales

12  and profits it would have made but for Defendants' acts.  RLP is further entitled to recover from

13  Defendants the gains, profits, advantages, and unjust enrichment they have obtained as a result of

14  their wrongful acts as hereinabove alleged.

15          141.   Economic damages cannot fully compensate RLP for the harm caused if

16  EBTM has used or does use RLP's trade secret information.  Unless and until restrained and

17  enjoined from disclosing or using RLP trade secret information, Defendants will continue to do

18  so, all to RLP's irreparable damage.  Accordingly, RLP is entitled to an injunction restraining

19  Defendants, their officers, agents, employees, and all persons acting in concert with them from

20  engaging in further unlawful acts and from reaping any additional commercial advantage from

21  their misappropriation of RLP's trade secrets.

22          142.   RLP is informed and believe and based thereon alleges that these acts of

23  misappropriation by Defendants were willful and malicious toward RLP, and undertaken with

24  the intent of injuring RLP in its business or in such conscious disregard of RLP's rights that RLP

25  is thereby entitled to an award of exemplary damages and reasonable attorneys' fees against

26  Defendants in an amount according to proof.

27

28

A/72216766.5

33

COMPLAINT

## SIXTH CAUSE OF ACTION

(Breach of Fiduciary Duty Against Defendants Lowlife and Masters)

143.    Plaintiffs reallege and incorporate herein Paragraphs 1 - 142 above in its Sixth Cause of Action.

144.    Lowlife and Masters were, according to Masters, in a "joint venture" with RLP regarding operation of the Loserkids.uk.com website. Lowlife and Masters were in a position of trust with discretion to operate and promote the site for the benefit of its owners. Similarly, Lowlife and Masters were in a position of trust with responsibility to promote, sell and distribute Macbeth product in the Territory.

145.    Lowlife and Masters owed and owe RLP fiduciary duties to act in the best interest of RLP with regarding to operation and promotion of Loserkids.uk.com and distribution and promotion of Macbeth and not to use their fiduciary position for their own benefit or for the benefit of EBTM to the detriment of RLP.

146.    RLP reasonably placed trust and confidence in Lowlife and Masters when it entrusted Lowlife and Masters with its trade secret information and trust in operating and promoting Loserkids.uk.com and distributing and promoting of Macbeth product in the Territory.

147.    RLP is informed and believes and on that basis alleges that Lowlife and Masters have breached and threaten to further breach their fiduciary duties to RLP by abusing the trust placed in them by, among other things, failing to operate and promote Loserkids.uk.com consistent with past practice and, instead, secretly and willfully conspiring with each other and EBTM to divert business from Loserkids.uk.com to EBTM.com.

148.    Similarly, RLP is informed and believes and on that basis alleges that Lowlife and Masters have breached and threaten to further breach their fiduciary duties to RLP by abusing the trust placed in them by failing to distribute and promote Macbeth product in the Territory consistent with past practice and, instead, intentionally seeking to devalue and unfairly prevent fair competition to Lowlife and EBTM with respect to sales of Macbeth products in the UK.

149.    Additionally, RLP is informed and believes and on that basis alleges that Lowlife and Masters have breached and threaten to further breach their fiduciary duties to RLP by misappropriating and furnishing RLP's trade secret information to EBTM.

150.    As a direct and proximate result of these breaches of fiduciary duty by Lowlife and EBTM, RLP has been damaged in an amount not yet ascertained, but which is in excess of the jurisdictional minimum of this Court.

151.    RLP is informed and believes and on that basis alleges that the above acts by Lowlife and Masters were done fraudulently and intentionally, with malice and oppression toward RLP, and with the intent of injuring RLP in its business or in such conscious disregard of RLP's rights that RLP is entitled to an award of exemplary or punitive damages against Lowlife and Masters in an amount according to proof.

## SEVENTH CAUSE OF ACTION

(Aiding and Abetting Breach of Fiduciary Duty Against Defendant EBTM)

152.    Plaintiffs reallege and incorporate herein Paragraphs 1 - 151 above in its Seventh Cause of Action.

153.    RLP is informed and believes and on that basis alleges that EBTM aided and abetted Lowlife and Masters' breach of fiduciary duty. RLP is informed and believes and based thereon alleges that EBTM gave substantial assistance to Lowlife and Masters in, among other things, their efforts to divert business from Loserkids.uk.com to EBTM.com and wrongfully transmit or cause to be transmitted RLP's trade secret information to EBTM.

154.    RLP is informed and believes and on that basis alleges that EBTM knew and knows of Lowlife and Masters' conduct, and breaches of fiduciary duties to RLP, and that EBTM has given and will continue to give substantial assistance and encouragement to Masters and Lowlife to breach their fiduciary duties. Indeed, RLP is informed and believes and on that basis alleges that Lowlife reviewed the terms of Atticus Asset Purchase Agreement and

155.    As a direct and proximate result of these actions by EBTM, RLP has been damaged in an amount not yet ascertained, but which is in excess of the jurisdictional minimum of this Court.

156. RLP is informed and believes and on that basis alleges that the above acts by EBTM were done fraudulently and intentionally, with malice and oppression toward RLP, and with the intent of injuring RLP in its business or in such conscious disregard of RLP's rights that RLP is entitled to an award of exemplary or punitive damages against EBTM in an amount according to proof.

## EIGHTH CAUSE OF ACTION

(Intentional Interference with Contract Against EBTM and Does 1 through 25)

157. Plaintiffs reallege and incorporate herein Paragraphs 1 - 156 above in its Eighth Cause of Action.

158. Lowlife and Masters entered into agreements with RLP as described above.

159. RLP is informed and believes and on that basis alleges that EBTM knew of the existence of Lowlife and Masters' agreements with RLP.

160. RLP is informed and believes and on that basis alleges that EBTM has engaged in intentional acts to induce Lowlife and Masters to breach their agreements with and otherwise cause injury to RLP, including but not limited to the following: (a) secretly plotting to transfer fulfillment for Loserkids.uk.com from Trinity Street to EBTM; (b) changing the link on Atticusclothing.com to buy Atticus product from Loserkids.uk.com to EBTM.com; (c) failing and refusing to ship Fall 2007 Atticus product for sale on Loserkids.com in the United States; (d) failing and refusing to ship any significant quantity of Fall 2007 Atticus product for sale on Loserkids.uk.com; and (e) seeking and obtaining RLP's trade secret information.

161. EBTM's conduct has caused Lowlife and Masters to breach their agreements with RLP as described above and misappropriate trade secret information as described below.

162. As a direct and proximate result of these acts by EBTM, RLP has been damaged in an amount not yet ascertained, but in excess of the jurisdictional minimums of this court.

A/72216766.5

36

COMPLAINT

163.   RLP is informed and believes and on that basis alleges that these acts of intentional interference by EBTM were willful and malicious toward RLP, and with the intent of injuring RLP in its business or in such conscious disregard of RLP's rights that RLP is thereby entitled to an award of exemplary damages and reasonable attorneys' fees against EBTM in an amount according to proof.

## NINTH CAUSE OF ACTION

(Unfair Competition Against All Defendants)

164.   Plaintiffs reallege and incorporate herein Paragraphs 1 - 163 above in its Ninth Cause of Action.

165.   RLP is informed and believes and on that basis alleges that Defendants have used unlawful means, including breach of contract, breach of fiduciary duty and misappropriation of trade secret information, to unfairly compete with RLP in violation of California common law.

166.   Additionally, RLP is informed and believes and on that basis alleges that Defendants unfairly competed with RLP in violation of the Atticus Asset Purchase Agreement, and California common law by implementing a stealth scheme to advertise by use of Tom DeLonge's and Blink 182's names by referencing them in the meta data for the Atticus webpage on EBTM.com, which meta data was known by EBTM to be read and indexed by search engine algorithms employed by Google and other major internet search providers.

167.   As noted above, RLP businesses have been quite successful, in significant part due to their affiliation with RLP's owner Tom DeLonge and RLP's historical affiliation with his current and former bands, including Blink-182.  Indeed, the websites for Mr. DeLonge's current band, Angeles & Airwaves, and former band, Blink-182, both link to Loserkids.com.  *See* http://www.blink182.com and http://www.angelsandairwaves.com.

168.   Accordingly, to insure RLP's rights are protected, and that Lowlife was under no illusions that the Atticus assets RLP sold to Lowlife included any rights to use or exploit RLP's relationships with Mr. DeLonge, Blink 182 or any of its other popular music affiliations, Section 4.4 of the Atticus Asset Purchase Agreement provides that "the Purchased

N/72216766.5

37

COMPLAINT

1    Assets do not include, and expressly exclude for all purposes, any use or right to use or reference

2    the name or likeness of Tom DeLonge . . . or the bands or musical groups commonly known as

3    'Blink 182.'"

4          169.    However, RLP is informed and believes and on that basis alleges that

5    EBTM has been using Tom DeLonge's name and the name of his former band, Blink 182, in

6    connection with promoting EBTM. RLP is informed and believes and on that basis alleges that

7    EBTM has engaged in this wrongful conduct, notwithstanding that its subsidiary Lowlife

8    expressly knew and acknowledged in the Atticus Asset Purchase Agreement that no rights to use

9    any of those names were included in the Atticus brand assets Lowlife acquired from RLP.

10         170.    More specifically, RLP is informed and believes and on that basis alleges

11   that EBTM has included in its meta data for the Atticus web page, http://www.ebtm.com/m-7-

12   atticus-clothing-at-ebtm.aspx, the following phrases: "Atticus Clothing. Designed by Tom

13   DeLonge" and "Atticus Clothing T Shirts T-Shirts tshirts blink 182." RLP is informed and

14   believes and on that basis alleges that EBTM intentionally and knowingly inserted these phrases

15   in its website meta data as a stealth means to improperly advertise and divert commercial traffic

16   to the EBTM.com site by use of Tom DeLonge's and Blink 182's names in violation of the

17   Atticus Asset Purchase Agreement, as EBTM knew that this meta data is read and indexed by

18   search engine algorithms employed by Google and other major internet search providers.

19   Indeed, on or about October 4, 2007, when the words "Atticus clothing" were typed into the

20   Google search engine, the sixth website listed in the search result was a link to the Atticus

21   webpage on EBTM.com, http://www.ebtm.com/m-7-atticus-clothing-at-ebtm.aspx, with the

22   phrase "Atticus Clothing. Designed by Tom DeLonge" in the search result:

23         **Atticus Clothing at EBTM**

24         Atticus Clothing. Designed by Tom Delonge. ... Atticus

25         Clothing. New Season on stock and ready to ship now! Don't see

26         what you want? ...

27         www.ebtm.com/m-7-atticus-clothing-at-ebtm.aspx- 56k -

28

A/72216766.5                              38

COMPLAINT

171.   Moreover, the phrase "Atticus Clothing. Designed by Tom DeLonge" is false and misleading to consumers, as Tom DeLonge did not design the Fall 2007 Atticus clothing being sold on EBTM's website. Put simply, RLP is informed and believes and on that basis alleges that EBTM unfairly competed with RLP by stealing the value associated with RLP's successful relations and associations with popular music celebrities in order to mislead consumers and illegally compete with, and steal customers from RLP.

172.   As a result of the wrongful acts described above, Lowlife, EBTM and Masters unfairly competed with RLP in the marketplace.

173.   As a direct and proximate cause of such unfair competition, RLP has been damaged in an amount not yet ascertained, but which is in excess of the jurisdictional minimum of this Court. RLP is further entitled to recover from the gains, profits, advantages, and unjust enrichment obtained by Defendants as a result of their unlawful conduct.

174.   RLP is informed and believe and based thereon alleges that these acts of unfair competition by Defendants were fraudulent, willful and malicious toward RLP, and with the intent of injuring RLP in its business or in such conscious disregard of RLP's rights that RLP is thereby entitled to an award of exemplary damages and reasonable attorneys' fees against Defendants in an amount according to proof.

## TENTH CAUSE OF ACTION

(Violation of Business & Professions Code 17200 Against All Defendants)

175.   Plaintiffs reallege and incorporate herein Paragraphs 1 - 174 above in its Tenth Cause of Action.

176.   Defendants' conduct alleged above constitutes unlawful and unfair business acts and is unfair competition in violation of Business & Professions Code Section 17200 *et seq.*

177.   These wrongful acts have proximately caused and will continue to cause RLP substantial injury, including injury to its reputation, loss of customers, and diminution in value of its confidential information and other proprietary materials. These actions will cause

COMPLAINT

1  imminent irreparable harm and injury to RLP, the amount of which will be difficult to ascertain

2  if they continue.  RLP is without an adequate remedy at law.

3         178.  RLP is entitled to Court Orders against Defendants as necessary to prevent

4  this unfair competition, including an injunction restraining Defendants, their officers, agents,

5  employees, and all persons acting in concert with them from engaging in further such unlawful

6  conduct, and, if necessary, for restitution and disgorgement of any funds received, which are

7  necessary to restore money or property to RLP that were acquired by Defendants by means of

8  unfair competition.

9  **PRAYER FOR RELIEF**

10       WHEREFORE, Plaintiffs pray for judgment in their favor and against Defendants

11  Lowlife, Masters, EBTM and the Doe Defendants as appropriate to the claims, as follows:

12       1.  General damages in an amount in excess of the jurisdictional minimum of

13  this Court, and according to proof, plus interest;

14       2.  Restitution based on Defendants' own unjust enrichment and an order for

15  Defendants to disgorge and restore all funds received by means of their unfair, unlawful and

16  fraudulent acts and practices in an amount according to proof;

17       3.  Exemplary and punitive damages according to proof;

18       4.  Rescission of the Atticus Asset Purchase Agreement at RLP's election;

19       5.  A preliminary and permanent injunction enjoining Defendants, and each

20  of them, and each of their agents, employees, and/or representatives, and any and all persons or

21  entities acting under their direction and control, from, without further order of the Court or

22  RLP's written consent:

23       (a)  using or disclosing in any fashion whatsoever any trade secret

24  information disclosed to EBTM by Lowlife, Masters and Does 1 through 25, which information

25  is not generally known to the public; and

26       (b)  return to Plaintiffs immediately any and all of Plaintiffs trade

27  secret information, including but not limited to customer lists and data and all other document as

28  defined pursuant to California Rules of Evidence 250, 255 and 260, which contain, represent;

A/72216766.5

40

COMPLAINT

1    depict or reflect any of Plaintiffs' trade secret information, which information is not generally

2    known to the public;

3            6.    An accounting from Defendants of their use of Plaintiffs' trade secret

4    information for their benefit and not Plaintiffs and a constructive trust for the benefit of Plaintiffs

5    to be imposed upon all funds, assets, revenues and profits Defendants have or will derive from

6    their unfair, unlawful and fraudulent acts and their misappropriation of Plaintiffs' trade secrets or

7    interference with Plaintiffs' vendor, distributor or retailer relationships;

8            7.    An accounting from Defendants of royalties due to Plaintiffs under the

9    applicable agreements;

10           8.    Costs and attorneys fees pursuant to terms of applicable agreements,

11   including the Atticus Asset Purchase Agreement Section 9.4 ("The Prevailing Party in any action

12   brought with respect to or to enforce any right or remedy under this Agreement shall be entitled

13   to recover from the non-prevailing Party or Parties all reasonable costs and expenses incurred by

14   the prevailing Party in connection with such action, including without limitation reasonable

15   attorneys' fees and prejudgment interest"), Macbeth Wind-Down Agreement Section 31.1

16   (same), and Loserkids.uk.com Wind-Down Agreement Section 6 ("Each Party hereto agrees to

17   indemnify and hold the other Party … harmless against any claim liability, cost and expenses

18   (including attorneys' and accountants' fees reasonably incurred) in connection with any breach

19   or alleged breach of this Agreement by the indemnifying party or otherwise as a result of the

20   indemnifying party's actions or omissions in connection with the operation of the Site.")

21           9.    Attorneys' fees pursuant to Civil Code Section 3426.4; and

22

23

24

25

26

27

28

A/72216766.5

41

COMPLAINT

1    10.    For such other and further relief as the Court may deem just and proper.

2

3    DATED:  November 13, 2007          BINGHAM McCUTCHEN LLP

4

5                                      By:

6                                              J. Warren Rissier

7                                      Attorneys for Plaintiffs Really Likeable People, Inc.,
                                       Loserkids, Inc., Macbeth, Inc., Macbeth Optics, LP, and
                                       Really Likeable People II, Inc. (formerly Atticus Clothing,
8                                      Inc.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A/72216766.5

42

COMPLAINT

1

### DEMAND FOR JURY TRIAL

2    Plaintiffs hereby demand a trial by jury on all issues as to which a jury is available.

3

4    DATED:  November 13, 2007        BINGHAM McCUTCHEN LLP

5

6                      By:_____

                             J. Warren Rissier

7

8                  Attorneys for Plaintiffs Really Likeable People, Inc., Loserkids, Inc., Macbeth, Inc., Macbeth Optics, LP, and Really Likeable People II, Inc. (formerly Atticus Clothing, Inc.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A/72216766.5

43

COMPLAINT

NOV-13-07  06:26PM  FROM-FIRST LEGAL SUPPORT                    T-236  P.06/07  F-762

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| J. Warren Rissler (SBN 197939)<br>Bingham McCutchen LLP<br>355 S. Grand Avenue, 44th Floor<br>Los Angeles, CA 90071<br>TELEPHONE NO.: (213) 680-6400    FAX NO.: (213) 680-6499<br>ATTORNEY FOR *(Name):* Plaintiffs Really Likeable People, Inc., et al. | FILED<br>CIVIL BUSINESS OFFICE 19<br>(..) DIVISION<br><br>07 NOV 13 PM 4: 04<br><br>CLERK-SUPERIOR COURT<br>SAN DIEGO COUNTY, CA |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SAN DIEGO**
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: The Hall of Justice

CASE NAME: REALLY LIKEABLE PEOPLE, INC., et al. v. LOWLIFE
CORPORATION, LTD, et al.

BY FA

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☒ Unlimited   ☐ Limited<br>(Amount   (Amount<br>demanded   demanded is<br>exceeds $25,000)   $25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 37-2007-00081582-CU-BC-CTL |
| | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| ☐ Auto (22) | ☒ Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | ☐ Other collections (09) | ☐ Construction defect (10) |
| **Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | **Real Property** | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | ☐ Eminent domain/inverse | ☐ Insurance coverage claims arising from the |
| ☐ Other PI/PD/WD (23) |   condemnation (14) |   above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) |   types (41) |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | **Enforcement of Judgment** |
| ☐ Civil rights (08) | **Unlawful Detainer** | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31) | **Miscellaneous Civil Complaint** |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ RICO (27) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| **Employment** | ☐ Petition re: arbitration award (11) | ☐ Other petition *(not specified above)* (43) |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is  ☒ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel  e. ☐ Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve       in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence     f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. ☒ monetary  b. ☒ nonmonetary; declaratory or injunctive relief   c. ☒ punitive
4. Number of causes of action *(specify):* Ten
5. This case  ☐ is  ☒ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: November 13, 2007
    J. Warren Rissler
    (TYPE OR PRINT NAME)     ▶       (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only. Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| J. Warren Rissler (SBN 197939)<br>Bingham McCutchen LLP<br>355 S. Grand Avenue, 44th Floor<br>Los Angeles, CA 90071<br>TELEPHONE NO: **(213) 680-6400**     FAX NO: **(213) 680-6499**<br>ATTORNEY FOR (Name): Plaintiffs Really Likeable People, Inc., et al. | FILED<br>CIVIL BUSINESS OFFICE 19<br>CENTRAL DIVISION<br><br>07 NOV 13 PM 4: 04<br><br>CLERK-SUPERIOR COURT<br>SAN DIEGO COUNTY, CA |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SAN DIEGO**
STREET ADDRESS: **330 West Broadway**
MAILING ADDRESS: **330 West Broadway**
CITY AND ZIP CODE: **San Diego, CA 92101**
BRANCH NAME: **The Hall of Justice**

CASE NAME: REALLY LIKEABLE PEOPLE, INC., et al. v. LOWLIFE
CORPORATION, LTD, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ☒ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | 37-2007-00081582-CU-BC-CTL |
| | | | | JUDGE:        DEPT: |

BY FAX

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☒ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is  ☒ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties    d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve         in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence     f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought (check all that apply): a. ☒ monetary  b. ☒ nonmonetary; declaratory or injunctive relief   c. ☒ punitive
4. Number of causes of action (specify): Ten
5. This case ☐ is  ☒ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)
Date: November 13, 2007
   J. Warren Rissler
   (TYPE OR PRINT NAME)        ▶        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS:     330 West Broadway
MAILING ADDRESS:    330 West Broadway
CITY AND ZIP CODE:   San Diego, CA 92101
BRANCH NAME:        Central
TELEPHONE NUMBER:   (619) 685-6028

PLAINTIFF(S) / PETITIONER(S):    REALLY LIKEABLE PEOPLE INC et.al.

DEFENDANT(S) / RESPONDENT(S): LOWLIFE CORPORATION LTD et.al.

REALLY LIKEABLE PEOPLE INC VS. LOWLIFE CORPORATION LTD

| NOTICE OF CASE ASSIGNMENT | CASE NUMBER:<br>37-2007-00081582-CU-BC-CTL |
| --- | --- |

Judge:  William R. Nevitt, Jr.                                         Department: C-64

COMPLAINT/PETITION FILED: 11/13/2007

### CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS: The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

COMPLAINTS: Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

DEFENDANT'S APPEARANCE: Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

DEFAULT: If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

CASE NUMBER: 37-2007-00081582-CU-BC-CTL      CASE TITLE: REALLY LIKEABLE PEOPLE INC vs. LOWLIFE CORPORA

### NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE

You are required to serve a copy of this Notice to Litigants/ADR Information Package and a copy of the blank Stipulation to Alternative Dispute Resolution Process (received from the Civil Business Office at the time of filing) with a copy of the Summons and Complaint on all defendants in accordance with San Diego Superior Court Rule 2.1.5, Division II and CRC Rule 201.9.

### ADR POLICY

It is the policy of the San Diego Superior Court to strongly support the use of Alternative Dispute Resolution ("ADR") in all general civil cases. The court has long recognized the value of early case management intervention and the use of alternative dispute resolution options for amenable and eligible cases. The use of ADR will be discussed at all Case Management Conferences. It is the court's expectation that litigants will utilize some form of ADR – i.e. the court's mediation or arbitration programs or other available private ADR options as a mechanism for case settlement before trial

### ADR OPTIONS

1) **CIVIL MEDIATION PROGRAM:** The San Diego Superior Court Civil Mediation Program is designed to assist parties with the early resolution of their dispute. All general civil independent calendar cases, including construction defect, complex and eminent domain cases are eligible to participant in the program. Limited civil collection cases are not eligible at this time. San Diego Superior Court Local Rule 2.31, Division II, addresses this program specifically. Mediation is a non-binding process in which a trained mediator 1) facilitates communication between disputants, and 2) assists parties in reaching a mutually acceptable resolution of all or part of their dispute. In this process, the mediator carefully explores not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities. The mediator is not the decision-maker and will not resolve the dispute – the parties do. Mediation is a flexible, informal and confidential process that is less stressful than a formalized trial. It can also save time and money, allow for greater client participation and allow for more flexibility in creating a resolution.

**Assignment to Mediation, Cost and Timelines:** Parties may stipulate to mediation at any time up to the CMC or may stipulate to mediation at the CMC. Mediator fees and expenses are split equally by the parties, unless otherwise agreed. Mediators on the court's approved panel have agreed to the court's payment schedule for county-referred mediation: $150.00 per hour for each of the first two hours and their individual rate per hour thereafter. Parties may select any mediator, however, the court maintains a panel of court-approved mediators who have satisfied panel requirements and who must adhere to ethical standards. All court-approved mediator fees and other policies are listed in the Mediator Directory at each court location to assist parties with selection. **Discovery:** Parties do not need to conduct full discovery in the case before mediation is considered, utilized or referred. **Attendance at Mediation:** Trial counsel, parties and all persons with full authority to settle the case must personally attend the mediation, unless excused by the court for good cause.

2) **JUDICIAL ARBITRATION:** Judicial Arbitration is a binding or non-binding process where an arbitrator applies the law to the facts of the case and issues an award. The goal of judicial arbitration is to provide parties with an adjudication that is earlier, faster, less formal and less expensive than trial. The arbitrator's award may either become the judgment in the case if all parties accept or if no trial de novo is requested within the required time. Either party may reject the award and request a trial de novo before the assigned judge if the arbitration was non-binding. If a trial de novo is requested, the trial will usually be scheduled within a year of the filing date.

**Assignment to Arbitration, Cost and Timelines:** Parties may stipulate to binding or non-binding judicial arbitration or the judge may order the matter to arbitration at the case management conference, held approximately 150 days after filing, if a case is valued at under $50,000 and is "at issue". The court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. In addition, if parties select an arbitrator from the court's panel, the court will pay the arbitrator's fees. Superior Court

SDSC CIV-730 (Rev 12-06)                                                                                        Page: 1

1

**3) SETTLEMENT CONFERENCES:** The goal of a settlement conference is to assist the parties in their efforts to negotiate a settlement of all or part of the dispute. Parties may, at any time, request a settlement conference before the judge assigned to their case; request another assigned judge or a pro tem to act as settlement officer; or may privately utilize the services of a retired judge. The court may also order a case to a mandatory settlement conference prior to trial before the court's assigned Settlement Conference Judge.

**4) OTHER VOLUNTARY ADR:** Parties may voluntarily stipulate to private ADR options outside the court system including private binding arbitration, private early neutral evaluation or private judging at any time by completing the "Stipulation to Alternative Dispute Resolution Process" which is included in this ADR package. Parties may also utilize mediation services offered by programs that are partially funded by the county's Dispute Resolution Programs Act. These services are available at no cost or on a sliding scale based on need. For a list of approved DRPA providers, please contact the County's DRPA program office at (619) 238-2400.

**ADDITIONAL ADR INFORMATION:** For more information about the Civil Mediation Program, please contact the Civil Mediation Department at (619) 515-8908. For more information about the Judicial Arbitration Program, please contact the Arbitration Office at (619) 531-3818. For more information about Settlement Conferences, please contact the Independent Calendar department to which your case is assigned. Please note that staff can only discuss ADR options and cannot give legal advice.

SDSC CIV-730 (Rev 12-06)

Page 2

2

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 330 West Broadway | |
| MAILING ADDRESS: 330 West Broadway | |
| CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827 | |
| BRANCH NAME: Central | |

| PLAINTIFF(S): REALLY LIKEABLE PEOPLE INC et.al. |
|---|
| DEFENDANT(S): LOWLIFE CORPORATION LTD et.al. |
| SHORT TITLE: REALLY LIKEABLE PEOPLE INC VS. LOWLIFE CORPORATION LTD |

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION PROCESS (CRC 3.221) | CASE NUMBER: 37-2007-00081582-CU-BC-CTL |
|---|---|

Judge: William R. Nevitt, Jr.                                                 Department: C-64

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution process. Selection of any of these options will not delay any case management time-lines.

☐ Court-Referred Mediation Program          ☐ Court-Ordered Nonbinding Arbitration

☐ Private Neutral Evaluation                ☐ Court-Ordered Binding Arbitration (Stipulated)

☐ Private Mini-Trial                        ☐ Private Reference to General Referee

☐ Private Summary Jury Trial                ☐ Private Reference to Judge

☐ Private Settlement Conference with Private Neutral     ☐ Private Binding Arbitration

☐ Other (specify): _____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name)

_____

_____

Alternate: (mediation & arbitration only) _____

Date: _____          Date: _____

Name of Plaintiff                        Name of Defendant

Signature                                Signature

Name of Plaintiff's Attorney             Name of Defendant's Attorney

Signature                                Signature

(Attach another sheet if additional names are necessary). It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, 3.1385. Upon notification of the settlement the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court and all un-served, non-appearing or actions by names parties are dismissed.

IT IS SO ORDERED.

Dated: 11/13/2007                         _____
                                          JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 01-07)                                                    Page 1

**STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**

PAGE 5/7 * RCVD AT 11/13/2007 5:15:45 PM [Pacific Standard Time] * SVR:LAFAX/15 * DNIS:28611 * CSID:* * DURATION (mm-ss):03-00

3

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**<br>STREET ADDRESS:    330 West Broadway<br>MAILING ADDRESS:    330 West Broadway<br>CITY AND ZIP CODE:    San Diego, CA 92101<br>BRANCH NAME:    Central<br>TELEPHONE NUMBER:    (619) 685-6028 | *FOR COURT USE ONLY* |
| **PLAINTIFF(S) :**    REALLY LIKEABLE PEOPLE INC et.al. | |
| **DEFENDANT(S) :** LOWLIFE CORPORATION LTD et.al. | |
| REALLY LIKEABLE PEOPLE INC VS. LOWLIFE CORPORATION LTD | 11/29/2007 |
| **NOTICE OF CASE REASSIGNMENT** | CASE NUMBER:<br>37-2007-00081582-CU-BC-CTL |

**Filed :** 11/13/2007

**EFFECTIVE IMMEDIATELY, THE ABOVE-ENTITLED CASE HAS BEEN REASSIGNED**

to Judge John S. Meyer, in Department C-61

due to the following reason: Peremptory Challenge

All subsequent documents filed in this case must include the name of the new judge and the department number on the first page immediately below the number of the case. All counsel and self-represented litigants are advised that Division II of the Superior Court Rules is strictly enforced. It is the duty of each plaintiff (and cross-complainant) to serve a copy of this notice with the complaint (and cross-complaint).

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

Central
330 West Broadway
San Diego, CA 92101

| | |
|---|---|
| **SHORT TITLE:** REALLY LIKEABLE PEOPLE INC vs. LOWLIFE CORPORATION LTD | |

| CLERK'S CERTIFICATE OF SERVICE BY MAIL | CASE NUMBER:<br>37-2007-00081582-CU-BC-CTL |
|---|---|

I certify that I am not a party to this cause. I certify that a true copy of the NOTICE OF CASE REASSIGNMENT was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The mailing and this certification occurred at <u>San Diego</u>, California, on <u>11/30/2007</u>.


Clerk of the Court, by: _J. Lizama_ _____, Deputy
J. Lizama

J WARREN RISSIER
355 S GRAND Avenue 44TH FLOOR
LOS ANGELES, CA 90071



1  Gerald L. McMahon, Esq. (SBN 036050)
   Monty A. McIntyre, Esq. (SBN 95796)
2  G. Scott Williams, Esq. (SBN 226516)
3  SELTZER CAPLAN McMAHON VITEK
   A Law Corporation
4  750 B Street, 2100 Symphony Towers
5  San Diego, California 92101-8177
   Telephone:   (619) 685-3003
6  Facsimile:   (619) 685-3100

7
   Attorneys for Defendants LOWLIFE CORPORATION LIMITED; EBTM plc; and DALE
8  MASTERS

9

10         SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

11                          (CENTRAL DIVISION)

12
   REALLY LIKEABLE PEOPLE, INC., a        )  CASE NO. 37-2007-00081582-CU-BC-CTL
13 Delaware corporation, LOSERKIDS, INC., a )
   California Corporation, MACBETH, INC., a )
14 California corporation, MACBETH OPTICS, )  ANSWER TO COMPLAINT
15 LP, a California limited partnership, and )
   REALLY LIKEABLE PEOPLE II, INC.         )
16 (formerly ATTICUS CLOTHING, INC.), a    )  Dept:      C-61
17 California corporation,                 )  Judge:     Hon. John S. Meyer
                                           )  Complaint Filed: November 13, 2007
18              Plaintiffs,                )  Trial Date:   Not Set
                                           )
19      vs.                                )
                                           )
20 LOWLIFE CORPORATION, LTD, an           )
   English limited company, EVERYTHING     )
21 BUT THE MUSIC, plc, an English          )
22 corporation, DALE MASTERS, an           )
   individual, and DOES 1 through 25,      )
23 inclusive,                              )
                                           )
24              Defendants.                )
                                           )
25

26      Defendants LOWLIFE CORPORATION LIMITED (incorrectly sued as LOWLIFE

27 CORPORATION, LTD); EBTM plc (improperly named in the Complaint as EVERYTHING

28 BUT THE MUSIC, plc); and DALE MASTERS (collectively, "Defendants") answer the

ANSWER TO COMPLAINT

Complaint of Plaintiffs REALLY LIKEABLE PEOPLE, INC., LOSERKIDS, INC., MACBETH, INC., MACBETH OPTICS, LP, and REALLY LIKEABLE PEOPLE II, INC. (formerly ATTICUS CLOTHING, INC.) (collectively, "Plaintiffs"), as follows:

## GENERAL DENIAL

Pursuant to California Code of Civil Procedure section 431.30(d), Defendants deny generally and specifically each and every allegation of Plaintiffs' Complaint, including all general allegations common to all causes of action, and each and every purported cause of action contained in the Complaint. Defendants also specifically deny that Plaintiffs have sustained any injury, damage, or loss in the sum alleged, or in any sum whatsoever, by reason of any act, omission or breach by Defendants, and deny that Plaintiffs are entitled to the relief requested in the Complaint or to any relief.

## AFFIRMATIVE DEFENSES

In setting forth the following affirmative defenses, Defendants neither expressly nor impliedly assume the burden of disproving any element of any claim for which Plaintiffs bear the burden of production or burden of proof as a matter of law.

Defendants allege the following affirmative defenses upon information and belief:

### FIRST AFFIRMATIVE DEFENSE

#### (Mandatory Arbitration)

1.    The causes of action alleged in the Complaint are subject to mandatory arbitration pursuant to contracts among the parties.

### SECOND AFFIRMATIVE DEFENSE

#### (Failure to State Facts)

2.    Plaintiffs have failed to state facts sufficient to constitute any cause of action against Defendants.

### THIRD AFFIRMATIVE DEFENSE

#### (Litigation Privilege)

3.    The causes of action alleged in the Complaint are barred by the litigation privilege in California Civil Code section 47.

ANSWER TO COMPLAINT

## FOURTH AFFIRMATIVE DEFENSE

### (Mutual General Release)

4.     The causes of action alleged in the Complaint are barred by a written mutual general release.

## FIFTH AFFIRMATIVE DEFENSE

### (Civil Code § 1542)

5.     The causes of action alleged in the Complaint are barred by California Civil Code section 1542.

## SIXTH AFFIRMATIVE DEFENSE

### (Settlement Agreements)

6.     The causes of action alleged in the Complaint are barred because they are arise from settlement communications that resulted in written agreements settling all known and unknown disputes between the settling parties.

## SEVENTH AFFIRMATIVE DEFENSE

### (Anti-SLAPP)

7.     The causes of action alleged in the Complaint are barred by California Code of Civil Procedure section 425.16.

## EIGHTH AFFIRMATIVE DEFENSE

### (Set Off and Recoupment)

8.     Defendants are entitled to credits, back charges, set off and recoupment in a sum to be shown according to proof at arbitration or trial.

## NINTH AFFIRMATIVE DEFENSE

### (Laches)

9.     Plaintiffs have delayed for an unreasonable period of time in asserting their causes of action against Defendants, which delays have prejudiced Defendants.  Therefore, Plaintiffs' causes of action against Defendants are barred under the doctrine of laches.

ANSWER TO COMPLAINT

## TENTH AFFIRMATIVE DEFENSE

### (Estoppel)

10.   Plaintiffs have engaged in conduct and activity such that their claims for damages or any other relief against Defendants are barred by the doctrine of estoppel.

## ELEVENTH AFFIRMATIVE DEFENSE

### (In Pari Delicto)

11.   Any damages incurred by Plaintiffs were the direct and proximate result of Plaintiffs' own conduct or negligence; therefore, Plaintiffs' claims are barred under the doctrine of in pari delicto.

## TWELFTH AFFIRMATIVE DEFENSE

### (Failure of Condition)

12.   As to each contract alleged in the Complaint, Defendants' performance is excused due to a failure of conditions.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Fraud)

13.   Defendants allege that at all times Defendants acted without intent to deceive or defraud Plaintiffs; further, Plaintiffs' alleged cause of action which sounds in fraud fails to plead fraud with the requisite particularity.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Performance)

14.   Defendants allege that Plaintiffs have failed to perform all conditions, covenants and promises required to be performed in accordance with the terms and conditions of any written and oral contracts which are the subject of this lawsuit.

15.   As to each cause of action stated in the Complaint, if Defendants are found to have failed to perform any covenant or condition pursuant to any purported agreement between Plaintiffs and Defendants, without admitting same, such failure was for the reason that Plaintiffs, by their acts and omissions, or those of their agents, prevented Defendants' performance and excused any and all future performance.

4

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Reasonable Care)

16.    As to each cause of action stated in the Complaint, Defendants allege that at all times and places set forth in the Complaint, and in each of its purported causes of action, Plaintiffs failed to exercise reasonable care on their own behalf and were otherwise legally responsible for their own loss.  Therefore, any recovery by Plaintiffs should be barred, or, in the alternative, diminished in an amount in accordance with the principle of comparative liability.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Mitigation of Damages)

17.    Plaintiffs have failed and refused, and continue to fail and refuse, to take reasonable or adequate steps to mitigate, alter, reduce or otherwise diminish the damages, if any, suffered.  By reason of the foregoing, Plaintiffs are barred from any recovery for such damages, if any.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

18.    Defendants allege that by virtue of Plaintiffs' unlawful, immoral, careless, negligent and other wrongful conduct, Plaintiffs should be barred from recovering against Defendants by the equitable doctrine of unclean hands.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Injunction)

19.    Any claim for injunctive relief is barred because Plaintiffs' legal remedy is adequate; further Defendants are informed and believe and thereon allege that any right to injunctive relief is barred because the harm to Defendants should the injunction be granted outweighs any harm to the Plaintiffs should the injunction be denied.

ANSWER TO COMPLAINT

## NINETEENTH AFFIRMATIVE DEFENSE

### (Unjust Enrichment)

20.    Defendants are informed and believe, and upon such information and belief allege, that the Plaintiffs are barred from any recovery sought in the Complaint, and each purported cause of action alleged therein, under the doctrine of unjust enrichment.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Waiver)

21.    As to each cause of action stated in the Complaint, Defendants aver on information and belief that Plaintiffs have engaged in conduct and activities sufficient to constitute a waiver of any claim or cause of action which they may otherwise have had against Defendants.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Acts, Omissions, and Breaches by Others)

22.    Plaintiffs' damages, if any, were proximately caused solely by the intervening conduct, acts, omissions, or breaches of parties and persons other than Defendants.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Lack of Personal Jurisdiction)

23.    This Court lacks personal jurisdiction over one or more of the Defendants.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Reservation of Other Affirmative Defenses)

24.    Defendants do not have sufficient knowledge or information upon which to form a belief as to whether they may have additional affirmative defenses available. Defendants reserve the right to assert additional affirmative defenses in the event discovery or further analysis indicate that additional unknown or unstated affirmative defenses would be applicable.

WHEREFORE, Defendants pray for judgment:

1.    That Plaintiffs take nothing by their Complaint;

2.    That Defendants be awarded costs of suit;

3.    For reasonable attorneys' fees incurred herein; and

ANSWER TO COMPLAINT

4.    For such other and further relief as the Court may deem just and proper.

Dated:  December 21, 2007                    SELTZER CAPLAN McMAHON VITEK
                                            A Law Corporation


                                            By:    _____
                                                   Gerald L. McMahon, Esq.
                                                   Monty A. McIntyre, Esq.
                                                   G. Scott Williams, Esq.
                                            Attorneys for Defendants LOWLIFE
                                            CORPORATION LIMITED; EBTM plc; and
                                            DALE MASTERS

7

ANSWER TO COMPLAINT

| | | |
|---|---|---|
| Monty A. McIntyre, Esq. (SBN 95796)<br>SELTZER CAPLAN MCMAHON VITEK<br>2100 Symphony Towers, 750 "B" Street<br>San Diego, CA  92101 | TELEPHONE NO.<br>(619) 685-3003 | COURT USE ONLY |
| Attorney For  LOWLIFE CORPORATION, LTD; EBTM, plc; and DALE MASTERS | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**<br><br>330 West Broadway, San Diego, California 92101 | | |
| PLAINTIFFS:  REALLY LIKEABLE PEOPLE, INC., a Delaware corporation, et al. | JUDGE:  John S. Meyer<br>DEPT:    61<br>DATE:<br>TIME: |
| DEFENDANTS:  LOWLIFE CORPORATION, LTD, an English limited company, et al. | |
| **DECLARATION OF SERVICE BY MAIL** | CASE NUMBER<br>37-2007-00081582-CU-BC-CTL |

I, Anna Gateley-Stanton, declare that:  I am over the age of 18 years and not a party to the case; I am employed in, or am a resident of, the County of San Diego, California, where the service occurs; and my business address is 2100 Symphony Towers, 750 B Street, San Diego, CA  92101.

On today's date, I caused to be served the following document(s): ANSWER TO COMPLAINT

By placing a true copy of each document in a separate envelope addressed to each addressee, respectively, as follows:

J. Warren Rissier (SBN 197939)
Aron P. Rofer (SBN 240021)
Bingham McCutchen LLP
355 S. Grand Avenue, 44th Floor
Los Angeles, CA  90071
Phone:  (213) 680-6400; Fax:  (213) 680-6499
Attorneys for Plaintiffs Really Likeable People, Inc.,
Loserkids, Inc., Macbeth, Inc., Macbeth Optics, LP, and
Really Likeable People II, Inc. (formerly Atticus
Clothing, Inc.)

I then sealed each envelope and, with postage thereon fully pre-paid,

[ ] I deposited each in the United States Postal Service at San Diego, California.

[X] I placed each for deposit in the United States Postal Service, this same day, at my business address shown above, following ordinary business practices.

I further declare that I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service; and that the correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 21, 2007, at San Diego, California.    _Anna Gateley-Stanton_
                                                               Anna Gateley-Stanton, PLS, CCLS

| Monty A. McIntyre, Esq. (SBN 95796)  TELEPHONE NO.<br>SELTZER CAPLAN MCMAHON VITEK   (619) 685-3003<br>2100 Symphony Towers, 750 "B" Street<br>San Diego, CA 92101 | COURT USE ONLY |
|---|---|
| Attorney For LOWLIFE CORPORATION LIMITED; EBTM plc; and<br>DALE MASTERS | FILED<br><br>2007 DEC 21  PM 4: 10<br><br>CLERK US DIST. COURT<br>SOUTHERN DISTRICT OF CALIFORNIA<br><br>BY_____DEPUTY |
| **UNITED STATES DISTRICT COURT**<br><br>**SOUTHERN DISTRICT OF CALIFORNIA** | |
| PLAINTIFFS: REALLY LIKEABLE PEOPLE, INC., a Delaware<br>corporation, et al. | JUDGE:<br>DEPT: |
| DEFENDANTS: LOWLIFE CORPORATION, LTD, an English limited<br>company, et al. | DATE:<br>TIME: |
| **CERTIFICATE OF SERVICE BY MAIL** | CASE NUMBER<br>'07 CV 2405 L CAB |

I, Anna Gateley-Stanton, declare that: I am over the age of 18 years and not a party to the case; I am employed in, or am a resident of, the County of San Diego, California, where the service occurs; and my business address is 2100 Symphony Towers, 750 B Street, San Diego, CA 92101.

On today's date, I caused to be served the following document(s): NOTICE OF REMOVAL OF CIVIL ACTION BASED ON FEDERAL DIVERSITY JURISDICTION (28 U.S.C. §§ 1332, 1441(B)); and NOTICE OF PARTY WITH FINANCIAL INTEREST

By placing a true copy of each document in a separate envelope addressed to each addressee, respectively, as follows:

J. Warren Rissier (SBN 197939)
Aron P. Rofer (SBN 240021)
Bingham McCutchen LLP
355 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071
Phone: (213) 680-6400; Fax: (213) 680-6499
Attorneys for Plaintiffs Really Likeable People, Inc., Loserkids, Inc., Macbeth, Inc., Macbeth Optics, LP, and Really Likeable People II, Inc. (formerly Atticus Clothing, Inc.)

I then sealed each envelope and, with postage thereon fully pre-paid,

[ ] I deposited each in the United States Postal Service at San Diego, California.

[X] I placed each for deposit in the United States Postal Service, this same day, at my business address shown above, following ordinary business practices.

I further declare that I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service; and that the correspondence shall be deposited with the United States Postal Service this same day in the ordinary course of business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 21, 2007, at San Diego, California.       _Anna Gateley-Stanton_
                                                                Anna Gateley-Stanton, PLS, CCLS

JS 44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I. (a) PLAINTIFFS**

REALLY LIKEABLE PEOPLE, INC., a Delaware corporation, LOSERKIDS, INC., a California Corporation, MACBETH, INC., a California corporation, MACBETH OPTICS, LP, a California limited partnership, and REALLY LIKEABLE PEOPLE II, INC. (formerly ATTICUS CLOTHING, INC.), a California corporatio

**DEFENDANTS**

FILED

LOWLIFE CORPORATION, LTD, an English limited company, EVERYTHING BUT THE MUSIC, plc, an English corporation, DALE MASTERS, an individual, and DOES 1 - 25

CLERK U.S. ~~~~~~~~~~
SOUTHERN DISTRICT OF CALIFORNIA

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Delaware
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  England, U.K.
(IN U.S. PLAINTIFF CASES ONLY)     DEPUTY
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

J. Warren Rissier (SBN 197939)
Bingham McCutchen LLP
355 S. Grand Avenue, 44th Floor
Los Angeles, CA  90071
(213) 680-6400

ATTORNEYS (IF KNOWN)

Monty A. McIntyre  (SBN 95796)
Seltzer Caplan McMahon Vitek
750 "B" Street, Suite 2100
San Diego, California  92101
(619) 685-3003

**II. BASIS OF JURISDICTION**  (PLACE AN 'X' IN BOX ONLY)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [x] 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**  (PLACE AN 'X' IN ONE BOX FOR
(For Diversity Cases Only)     PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated or Principal Place of Business in This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [x] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. CAUSE OF ACTION**  (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

28 U.S.C. Section 1332, 1441(B)

'07 CV 2405 L CAB

**V. NATURE OF SUIT**  (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reappointment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury - | [ ] 620 Other Food & Drug | | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Medical Malpractice | [ ] 625 Drug Related | [ ] 423 Withdrawal | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | Liability | [ ] 365 Personal Injury - | Seizure of | 28 USC 157 | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Product Liability | Property 21 USC 881 | **PROPERTY RIGHTS** | [ ] 460 Deportation |
| & Enforcement of Judgment | Slander | [ ] 368 Asbestos Personal | [ ] 630 Liquor Laws | [ ] 820 Copyrights | [ ] 470 Racketeer Influenced and |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Injury Product Liability | [ ] 640 R.R. & Truck | [ ] 830 Patent | Corrupt Organizations |
| [ ] 152 Recovery of Defaulted | Liability | | [ ] 650 Airline Regs. | [ ] 840 Trademark | [ ] 810 Selective Service |
| Student Loans (Excl. Veterans) | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 660 Occupational | **SOCIAL SECURITY** | [ ] 850 Securities/Commodities/ |
| [ ] 153 Recovery of Overpayment | [ ] 345 Marine Product | [ ] 370 Other Fraud | Safety/Health | [ ] 861 HIA (1395ff) | Exchange |
| of Veteran's Benefits | Liability | [ ] 371 Truth in Lending | [ ] 690 Other | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle | [ ] 380 Other Personal | **LABOR** | [ ] 863 DIWC/DIWW | 12 USC 3410 |
| [x] 190 Other Contract | [ ] 355 Motor Vehicle | Property Damage | [ ] 710 Fair Labor | (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 195 Contract Product Liability | Product Liability | [ ] 385 Property Damage | Standards Act | [ ] 864 SSID Title XVI | [ ] 892 Economic Stabilization |
| | [ ] 360 Other Personal Injury | Product Liability | [ ] 720 Labor/Mgmt. Relations | [ ] 865 RSI (405(g)) | Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 730 Labor/Mgmt. | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motion to Vacate | Reporting & | [ ] 870 Taxes (U.S. Plaintiff | [ ] 894 Energy Allocation Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | Sentence | Disclosure Act | or Defendant) | [ ] 895 Freedom of |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ | **HABEAS CORPUS:** | [ ] 740 Railway Labor Act | [ ] 871 IRS - Third Party | Information Act |
| [ ] 240 Torts to Land | Accommodations | [ ] 530 General | [ ] 790 Other Labor Litigation | 26 USC 7609 | [ ] 900 Appeal of Fee |
| [ ] 245 Tort Product Liability | [ ] 444 Welfare | [ ] 535 Death Penalty | [ ] 791 Empl. Ret. Inc. | | Determination Under |
| [ ] 290 All Other Real Property | [ ] 440 Other Civil Rights | [ ] 540 Mandamus & Other | Security Act | | Equal Access to Justice |
| | | [ ] 550 Civil Rights | | | [ ] 950 Constitutionality of |
| | | [ ] 555 Prison Conditions | | | State Statutes |
| | | | | | [ ] 890 Other Statutory Actions |

**VI. ORIGIN**  (PLACE AN "X" IN ONE BOX ONLY)

- [ ] 1 Original Proceeding
- [x] 2 Removal from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**  [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $    CHECK YES only if demanded in complaint:
JURY DEMAND: [x] YES  [ ] NO

**VIII. RELATED CASE(S)**  (See instructions:)
**IF ANY**    JUDGE _____    Docket Number _____

DATE

December 21, 2007

SIGNATURE OF ATTORNEY OF RECORD

Monty A. McIntyre

PAIP $350  12/21/07 BH RCPT # 145838

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 145838    – BH
\* \* C O P Y \* \*
December 21. 2007**
16:12:22

**Civ Fil Non-Pris**
USAO #.: 07CV2405 CIVIL FILING
Judge..: M. JAMES LORENZ
Amount.:                    $350.00 CK
Check#.: BC# 6978

**Total–>  $350.00**

FROM: CIVIL FILING
      REALLY LIKEABLE PEOPLE V.
      LOWLIFE CORP.